## PIERRE WATER-WORKS Co., Appellant, *v.* HUGHES COUNTY, Respondent.

**1. Appeal—Taxation—Equalization.**

Under section 46, c. 21, Pol. C., allowing appeals to the district court "from all decisions of the board of county commissioners," an appeal will lie from the decision of such board, though sitting as a board of equalization under section 28, c. 28, Pol. C., providing that "the board of county commissioners of each county shall constitute a board of equalization," etc.

**2. Same—Appealable Decision.**

The decision of a board of county commissioners in refusing to reduce an assessment is sufficiently judicial in its character to sustain an appeal under section 46, c. 21, Pol. C., allowing appeals to the district court "from all decisions of the board of county commissioners."

(Argued May 18, 1887; reversed May 26; opinion filed February 24, 1888.)

Appeal from the district court of Hughes county; Hon. L. K. CHURCH, Judge.

*C. E. De Land* and *H. R. Horner*, for appellant.

The statutes create but one county board,—the board of county commissioners.

Section 29, c. 21, Pol. C., contains the general grant of
v.5DAK.—10

power to them. It gives them power to "equalize the assessment roll of their county, in the manner provided by law."

It will be noted that in this provision the grant of power to perform is ample and complete, but the manner of the performance is not specified, further than that it is to be done "in the manner provided by law."

The power to act upon the subject of revenue and the assessment of property and the equalization of assessments is as plainly and completely conferred as any other power found enumerated in that section. Indeed, this very subject of revenue and equalization of assessments stands out in prominence among the other powers specified. There is nothing left undone in the matter of the power to equalize, as therein provided; and we submit that it is clear, beyond dispute, that this power is conferred upon the board of county commissioners.

We come now to the consideration of section 28, c. 28, which more particularly prescribes the duty of equalizing and correcting the assessment roll:

"The board of county commissioners of each county shall constitute a board of equalization for the county." Wherein does the above provision differ from a provision in substance as follows: The board of county commissioners shall perform the duties of equalizing for the county? An examination of the legislation of the territory with reference to revenue establishes our contention, that the legislature has created but the one board,—that of county commissioners.

We also find from the former laws that the board of county commissioners was, from the beginning, the only county board known to the law; that the power to equalize was vested in, and the correlative duty imposed upon, that board; and that the term "board of ‘ equalization ’" was used to indicate the nature of certain duties imposed upon that board, to be exercised at certain times.

The record of the commissioners in this case is a virtual admission of our position. It shows them sitting as a board of county commissioners. That is the effect of the language used.

The district court has jurisdiction upon appeal from the action and decision of the county board in placing a valuation upon property for taxation.   Section 29, C. C. Pro., defines the appellate jurisdiction of the district court.   For the sufficiency of the terms therein used to include this appeal, see section 228, C. C. Pro.; "Decision," 1 Bouv. Law Dict. 438; 1 Abb. Law Dict. 351; *Hanna* v. *Commissioners Putnam Co.*, 29 Ind. 170.

These boards are inferior tribunals, we submit, within the meaning of that section, and invested with judicial functions. High, Ex. Rem. 346; *Jermaine* v. *Waggoner*, 1 Hill, 297.

And when performing the duties of equalizing assessments and levying taxes, such boards are likewise acting judicially. *Eaton* v. *Calendar*, 11 Wend. 89; Cooley, Taxation, 422; High, Ex. Rem. § 141; Desty, Taxation, 498; *People* v. *Goldtree*, 44 Cal. 323.

By section 46, c. 21, Pol. C., an appeal is given from all decisions of the county board, to any person aggrieved, upon matters properly before it.

The case at bar presents a grievance for which a remedy by appeal should exist, in accordance with general principles of law.

Judge Cooley, in his work on Taxation, pp. 746, 747, enumerates, as among the wrongs of which one may complain in tax cases: "The laying upon him of an excessive or partial assessment," "the laying of the tax on some erroneous and inadmissible principle," and "the failure to obey the law in the proceedings, to the injury of the party's rights."   And on the next page, (748,) the same author, in stating instances in which, under some laws, application for abatement of the assessment is the sole remedy, is careful to add that the case must be one "where no principle of law is violated in making it." See, also, Desty, Taxation, 87, 624, 625.

*C. J. Crawford*, for respondent.

Counsel have reviewed the entire history of our legislation to establish their proposition that "the statutes create but one county board,—the board of county commissioners."

We admit much that is claimed, but contend—

1. That the record of the proceedings of the county board of equalization is not the record of the proceedings of the board of county commissioners as such.

2. That the county clerk may certify to the record of the county board of equalization as such, and such certified copy is competent evidence; *aliter* the original is the evidence, and there is no consequent failure of proof or record.

3. That the sessions of the county commissioners as such are not the only sessions the county clerk must attend, and the record of their proceedings as such are not the only record he is required to keep.

Our legislature has very wisely protected the public from unnecessary expense in numerous cases, by creating different boards out of the same component membership, and providing that the meetings of each board may, as nearly as possible, be held at the same time and place.

In many instances the duties of the several boards, composed of the same members, and constituted the same, are widely divergent, and wholly unlike.

It does not follow by any means that when the membership is identical there is but one board.

In law, one person may be a parent, a husband, an heir, a guardian, a partner, a beneficiary, an executor, an administrator, and an assignee, and in each capacity his standing in a court as a party plaintiff or defendant rests entirely upon his peculiar relations to that case and the issues involved therein.

Corporations, partnerships, and official boards are marked in their aggregate and organized existence by a distinct individuality, which does not depend upon the character of their component parts when segregated, but upon the legal existence and legal character of the body itself, the unit, when organized as such.·

Now, if the board of equalization is the same board as the board of county commissioners, why should it have "a formal

·existence" thus created?   Why should a board of equalization be "made up" or "composed" at all?

If there is but one board, why should it be necessary for the .statute to provide that the county clerk of the county shall be the clerk of said board of equalization for the county?   If the board of equalization is not a distinct tribunal, it was not neces-.sary to thus specially provide for it a clerk.

If it is not a distinct board, why did not section 30, c. 21, Pol. C., so frequently cited by opposing counsel, and which prescribes the specific duties of the board of county commissioners .at its meeting on the first Monday in July, also include and mention the duty of "equalizing and correcting the assessment roll," and provide that it shall then perform that duty?   Why was this latter duty specified as the peculiar and special duty of the board of equalization at its only meeting in July of each year?   Section 29, c. 28, Pol. C.   See, also, sections 8, 10, 19, c. 28, Pol. C.

But counsel insist that the board of county commissioners has power "to equalize the assessment roll of their county" un-·der the power guarantied in section 29, c. 21, Pol. C.   But how have they that power?—"in the manner provided by law."

What does this language mean?   It cannot in any sense be ·construed to mean that the board of county commissioners as such has. the exclusive power to equalize the assessment roll, because sections 28, 29, c. 28, Pol. C., expressly confer such power upon, and makes the exercise thereof the peculiar duty ·of, the board of equalization.

The language of section 29, c. 21, Pol. C., referring to the ·county commissioners, is:   "They shall have power," etc.   It ·does not say the board shall have power," but they—the commissioners—shall have power to equalize the assessment roll in the manner provided by law.

We take it that the word "they," as here used, refers, not to the board of county commissioners, but to the members thereof, who shall exercise the power conferred "in the manner provided by law;" sometimes acting as a board of health, sometimes as

a board of county commissioners, and, in the matter of equaliz-
ing the assessment roll, acting as the board of equalization.

So, in this territory, it is no unusual thing for the court to sit,
at the same term, now as the court to determine United States
cases, and now as the court for the determination of territorial
cases.

The right to appeal given by statute from an order of the
board of commissioners does not imply the right of appeal from
orders of the board of equalization.   *General Custer Min. Co.* v.
*Van Camp*, 3 Pac. Rep. 22; *Gillette* v. *Treasurer Lyon County*,
1 Pac. Rep. 577.

No appeal lies in this case.   Boards of county commissioners
have no judicial function, power, or authority.   Their "decis-
ions" are not judicial determinations.   *Rupert* v. *Board of
County Com'rs*, 2 Pac. Rep. 718.   Section 1907, Organic Act.
*Hedgers* v. *Commissioners of Lewis and Clark Cos.*, 1 Pac. Rep.
742. "From all decisions  *  *  *  upon matters properly before
them" is without any force or effect under the organic law, be-
cause the "legislature cannot confer on one court the functions
and powers which the constitution has given to another, when
that jurisdiction is exclusive.   *Cartwright* v. *Bear River & Aul.
Watch Co.*, 30 Cal. 580.

The "decision" appealed from must be a *judicial* decision to
give the district court jurisdiction, and the board cannot render
a *judicial* decision.   *Fulkerson* v. *Stevens*, 1 Pac. Rep. 261.

TRIPP, C. J.   This case comes to this court on appeal from
the order of the district court in and for Hughes county, dis-
missing an appeal from the decision of the board of county
commissioners of that county, sitting as a board of equalization
in the matter of the assessment of plaintiff's property for taxes.
The board of county commissioners of Hughes county met at
the county-seat on the first Monday of July, 1886, as provided
by statute, and convened as a board of equalization, and ad-
journed to July 14, 1886.   Upon the last-named day, said com-
missioners, as a board of equalization, proceeded to equalize

the tax assessment of that year, and, among others, they raised and fixed the assessment of this plaintiff at $20,000.  To this action of the board the plaintiff demurred, and claimed that the value of said property was not greater than $2,100, and that it should be equalized and assessed at that sum, and no more; and from the decision of the board fixing the assessment at $20,000, and declining to reduce the sum, the plaintiff took an appeal to the district court of Hughes county.  The appeal coming on to be heard in the district court, the respondent moved to dismiss, upon the ground that the decision appealed from was a decision of the board of equalization, and not a decision of the board of county commissioners, and that no appeal lay therefrom to the district court.  The court sustained this position of respondent, and dismissed the appeal for want of jurisdiction, from which order an appeal has been taken to this court; and the question presented is, does an appeal lie from the decisions of the board of equalization to the district court in matters of assessment?  And this presents two questions for our determination:

1. Is the decision of the board of equalization a decision of the board of county commissioners?

2. If so, is the decision in this case such a decision, within the meaning of the statute, as may be appealed from?

As to the first question presented, it is conceded by appellant that there is no statute giving an appeal from the board of equalization as such, and that, an appeal being purely a statutory remedy, unless the appeal is authorized by the statute allowing an appeal from "all decisions of the board of county commissioners upon matters properly before them," (Pol. Code, c. 21, § 46,) the district court was without jurisdiction, and its judgment must be affirmed.

The court below held that the board of equalization was a board separate and distinct from the board of county commissioners, and that, while it was composed of the same individuals, its powers and duties were separate and distinct, and that its decisions and determinations, if reviewable at all, were

not reviewable upon appeal. The question, while an important one to the tax-payer as well as to the profession, is purely a statutory one, and its determination depends entirely upon the construction to be given the statute creating and constituting the board of equalization. The position of respondent, that the distinctness and independence of these tribunals does not depend upon the fact whether they are composed of the same or different individuals, and that such fact established would not "unify the functions or powers of the two," is undoubtedly correct. It is no unusual thing that the same person holds separate and distinct offices, with separate and distinct powers, and that his acts and decisions while exercising the one office are wholly independent of his acts and decisions done and made while exercising the other. A slight change in the phraseology of the statute which permits or authorizes the same person to exercise different functions of the same office, or to fill separate offices at the same time, may make his acts separate and independent of each other,—the acts of different officers,—or may make them all the acts of one officer exercising different powers and jurisdictions. The legislature may confer the duties of several officers upon one, or may subdivide the duties of any office, and confer such duties upon different officers, or create separate and distinct offices for each class of duties, as it may see fit. There are no inherent duties appertaining to any office which may not be changed at the will of the legislative body. It may provide that the probate judge shall perform the duties of county treasurer, and that the register of deeds shall be clerk of the county board, as appears from the early legislation of this territory, and it may do this by providing that such officer may exercise such duties ex officio, or it may require such duties to be performed by him in his one official capacity, where not restrained by some constitutional provision or organic law.

The court must therefore look to the wording and phraseology of the statute in each particular case in determining whether the legislature intended to create two offices, each to be exercised separately by the same individual, or whether it intended

to impose upon one officer the additional duties of another office. This court held in *County* v. *Simonsen,* 1 Dak. 403, where Simonsen had given bond "to well and faithfully and impartially perform the duties and execute the office of probate judge," and had never given any bond as treasurer of the county, that he was held on such bond for his default as treasurer; the statute at that time making the judge of probate the treasurer *ex officio* of the county. This was upon the principle just enunciated, that, notwithstanding the statute recognized the office of treasurer as a distinct one by using the words "*ex officio,*" yet the effect of all the statutes, when considered together, was to impose upon the probate judge the duties of treasurer, and that, therefore, a default in those duties was a default in his duties as probate judge. The question, then, recurs, did the legislature intend to create a separate and distinct tribunal of the board of equalization, or did it intend to confer the duties of the board of equalization upon the board of county commissioners? The general powers of the board of county commissioners are enumerated in the statute of this territory as follows:

"Sec. 29. They shall have power to make all orders respecting property of the county, to sell the public grounds of the county, and to purchase other grounds in lieu thereof.   *   *   *

"2. They shall have power to levy a tax not exceeding the amount now authorized by law, and to liquidate indebtedness.

"3. To audit the accounts of all officers having the care, management, collection, or disbursement of any money belonging to the county, or appropriated for its benefit.

"4. To construct and repair bridges, and to open, lay out, vacate, and change highways; to establish election precincts in their county, and appoint the judges of election, and *to equalize the assessment roll of their county, in the manner provided by law.*

"5. To furnish the necessary blank-books, blanks, and stationery for clerks of the district court, county clerk, register of deeds, county treasurer, and probate judge of their respective

counties, to be paid out of the county treasury; also a fire-proof safe, when in their judgment the same shall be deemed advisable, in which to keep all the books, records, vouchers, and papers pertaining to the business of the board.

"6. To do and perform such other duties and acts that boards of county commissioners are now, or may be hereafter, required by law to do and perform." Pol. Code, c. 21.

It will be observed that extensive powers are intrusted to this board,—legislative, administrative, executive, and *quasi* judicial; and among these enumerated powers is the power to "*equalize the assessment roll of the county.*"

At first reading, the statute seems so clear that there is little room for doubt that the duty of equalizing the assessment of taxes is expressly conferred upon the *board of county commissioners.* Shelter for argument against this plain enumeration of the duties of the board is first sought in the words, "in the manner provided by law," and it is contended that other provisions of the statutes which refer to the "board of equalization" have provided a *manner* of exercising this jurisdiction, to-wit, by authorizing the individual commissioners to act as a board of equalization; and, in support of this argument, the attention of the court is called to the fact that the statute granting these powers of the commissioners commences with the words, "they shall have power," etc., instead of, "the board of county commissioners shall have power," etc.; and that the words, "they shall have power to equalize the assessment roll of the county in the manner provided by law," must be taken to mean that the individuals composing the board of county commissioners shall have power, when sitting as a board of equalization, to equalize the assessment roll of the county.

A hasty glance at chapter 21 of the Political Code, prescribing the duties and powers of the county commissioners and other officers of the county, will show that the word "*they*" is constantly used for and in lieu of the "*board*" in nearly every section wherein the duties and powers of the board are enumerated.

Section 18 begins: "The county commissioners shall meet and hold sessions for the transaction of business at the court-house in their respective counties."

Section 19 reads: "At the first meeting of the county commissioners in each and every year, *they* shall elect one of their number chairman."

Section 21: . "When the board of county commissioners are equally divided on any question, *they* shall defer the decision until the next meeting of the board."

Section 23: "The board of county commissioners shall have power to preserve order when sitting as a board, and may punish contempts by fines not exceeding five dollars, or by imprisonment in the county jail not exceeding twenty-four hours. *They* may enforce obedience to all orders made, by attachment or other compulsory process; and, when fines are assessed by *them*, the same may be collected before any justice of the peace having jurisdiction."

Section 24: "The said *commissioners* shall keep a distinct account with the treasurer of the county.   *   *   *   *They* shall charge the treasurer with all sums paid him,   *   *   *   and *they* shall credit him with all warrants returned and canceled, *   *   *   and the said *board* shall, in *their* settlement with the treasurer, keep the general, special, and road tax separate."

Section 25: "*They* shall keep a book in which all orders and decisions made by *them* shall be recorded, except those relating to roads and bridges."   *   *   *

Section 26: "*They* shall keep a book for the entry of all proceedings and adjudications."

Section 27: "*They* shall keep a book for the entry of warrants on the county treasurer."   *   *   *

Section 28: "*They* shall have power to institute and prosecute civil actions in the name of the county."

Section 30: "*They* shall superintend the fiscal concerns of the county, and secure their management in the best manner. *They* shall keep an acount of the receipts and expenditures of the county.   *   *   *   *They* shall cause a full and accurate state-

ment of the assessments    *    *    *    to be made out,    *    *    *
and *they* shall have the same printed."

Section 32 : "*They* shall submit to the people of the county
*    *    *    any question involving an extraordinary outlay of
money."

. Section 33 : "*When* county warrants are at a depreciated
value, the said commissioners may, in like manner, submit the
question whether a tax    *    *    *    may be levied."

Section 40 : "*They* shall hold their sessions with open doors,
and transact all business in the most public manner; and where
the county has no court-house, or the court-house shall be un-
fit or inconvenient, *they* may hold their sessions for the transac-
tion of business at any other suitable place at the county-seat.
All matters pertaining to the interest of the county shall be heard
by the *board* of county commissioners in session only, but *they*
may continue any business from any regular session to any in-
termediate day."

All these powers and duties prescribed by statute, it will be
observed, are powers and duties which "*they*" are to exercise and
perform, not as individuals, but as a "*board*" of county commis-
sioners in session only."

It will hardly be contended that the other powers and duties
enumerated by the statute are to be performed by the commis-
sioners in their individual capacity; that accounts can be au-
dited, highways and bridges laid out or constructed, or the pub-
lic property of the county be sold or disposed of by the commis-
sioners acting in their individual capacity.    Yet the power to
equalize the assessment roll is introduced by the same word
"*they*," which precedes all the other enumerated powers of the
board.    Clearly, the word "they" is used to designate the com-
missioners collectively as a board in session.

And the words "in the manner provided by law" cannot be con-
strued to give to the preceding clause the significance contended
for by counsel.    If the words are to be construed as qualifying
the words "and to equalize the assessment roll" only, and not
the other powers enumerated in the same subdivision, which is

at least doubtful, they cannot be construed as referring to anything but the method or practice employed in the exercise of the power granted. The words are words of emphasis merely. It would be incumbent upon the commissioners to exercise this, as well as other powers conferred upon them, "in the manner provided by law," without these words; and perhaps their acts, performed in an irregular manner, and not "in the manner provided by law," might be void. But, whatever might be the result of an irregular performance of their other powers and duties, the statute expressly enjoins that in the performance of this duty, and the exercise of this power, they must do it "in the manner provided by law." Can this be construed to mean that this duty shall be done, and that this power, so expressly conferred on the board of county commissioners, may be exercised by another board? When the statute provides that the board of county commissioners "shall equalize the assessment roll in the manner provided by law," does it mean that this board shall transfer this duty to another board? Would that be a performance of its duty "in the manner provided by law?" The statement of the proposition answers the argument. The words "in the manner provided by law" are words of practice, merely requiring the board of county commissioners, in equalizing the assessment roll, to follow the practice and rules of procedure laid down by the statutes and laws of the territory.

Much stress is laid upon the wording of section 28, c. 28, Pol. Code, by respondent's counsel, which reads as follows: "The board of county commissioners of each county shall constitute a board of equalization for the county, and said board, or a majority of the members thereof, shall hold a session of not less than two days at the county-seat, commencing on the first Monday of July in each year, for the purpose of equalizing and correcting the assessment roll of their county; and, in order to equalize and correct such assessment roll, they may change the valuation and assessment of any property, real or personal, upon the roll, by increasing or diminishing the assessed valuation thereof, as shall be reasonable and just, to render taxation uni-

form : provided, that the aggregate assessment shall not be materially changed thereby."

But a careful analysis of this section discloses no such conflict with section 29, c. 21, *supra,* as shows an intention on the part of the legislature to qualify or negative the effect of that section by taking away the powers there conferred upon the county commissioners, and bestowing them upon another separate and distinct board. The section reads : "The *board* of county commissioners shall constitute the *board* of equalization." It does not say the individual members of the board of county commissioners shall constitute the board of equalization. If the board of county commissioners constitute the board of equalization, when the board of equalization is constituted, it is the board of county commissioners constituted as a board of equalization. In other words, it is the board of county commissioners exercising additional powers of another jurisdiction, but it is still the board of county commissioners. It is not unlike the jurisdiction of a court of record, upon which a new jurisdiction is conferred, such as probate, equity, or maritime jurisdiction.

It would hardly be contended that, in conferring such new jurisdiction, it would be necessary to provide that the judgment rendered in the exercise of such jurisdiction might be appealed from, the same as other judgments of the court. And it would hardly be denied that the general provis.on allowing appeals from all final judgments of the court would be sufficient to bring up a judgment rendered in the exercise of the new jurisdiction conferred. Yet is not that this case, less strongly put? Here is the exercise, not of the new but of the old jurisdiction, as old as any jurisdiction of this tribunal, specially provided for, to be exercised "in the manner provided by law," to-wit, that the county commissioners shall hold a session on the first Monday of July, of not less than two days, for the particular purpose of equalizing the assessment roll, and they may make such changes as are therein provided for. It does not provide that the board shall hold *the* session, but it provides that the "board shall hold

*a* session," clearly implying that this is not the only session the board is to hold, but that it is a session of the board of county commissioners for this purpose; but as it is the only session of the board for this purpose during the year, if the intention of the legislature was as contended for by respondent, it would have been more consistent to have used the words "its session" or "the sessions" than the indefinite words "a session." And this intention of this legislature is further shown by the fact that in section 18, c. 21, Pol. Code, the legislature has provided for a general session of the board of county commissioners to meet at the same time and place for the transaction of the general public business of the county.

And this answers the argument that, because the equalization is fixed for a specific and certain time, that the tribunal exercising such jurisdiction is another and distinct one. The legislature could have prescribed all the meetings of the board of county commissioners. It has fixed some of their meetings by law, and it could have limited their meetings to those stated times, if it had chosen to do so. It could also, without doubt, have provided when and at what meeting the board should exercise the various powers conferred, and in such case it could perhaps have exercised such powers at no other time; but that would be a feeble argument in favor of the proposition that, because they could exercise certain powers only at stated times, they were a different tribunal from the one exercising their other and more general powers. The prescribing of the time of exercising such jurisdiction is but one way of providing for the "*manner*" of such exercise, and is within the undoubted exercise of legislative power. The section, then, properly construed, supports, and is not in conflict with, section 29, c. 21, Pol. Code.

That section enumerates the powers of the board of county commissioners, among which is the power of equalizing the assessment roll "in the manner provided by law," and section 28, c. 28, with others, provides the *manner* of exercising such powers, to-wit, the time when the session shall be held, the shortest

length of session, and what changes may be made. It in no way conflicts, but supplements and supports, the former section. Section 30, c. 28, *supra,* which provides that the "county clerk of the county shall be the clerk of such board of equalization for the county," must in like manner be construed not as in conflict with section 28, *supra,* enumerating the powers of the board of commissioners, but it must be construed to mean that the clerk has the same jurisdiction conferred upon him to act as county clerk when the board of county commissioners is exercising its powers as a board of equalization that he has when the board of county commissioners is exercising its other powers or jurisdiction.

This view of the powers of the board of county commissioners is strengthened by an examination of the statutes giving them complete control over the fiscal affairs of the county, and, in addition to statutes already quoted, we may refer to section 4, c. 28, Rev. Codes, where it is provided that "the board of county commissioners of each county shall provide, for the use of the assessor, suitable notices and blank forms for the listing and assessment of all property, and such instructions as shall be needful to secure full and uniform assessment and returns." And again, in section 19, c. 28, *supra,* it is provided that "it shall be the duty of the county commissioners to equalize the valuation of such property in the same manner as of other property; and if the return has not been made by the proper officer at the proper time, as required by this act, it shall be the duty of said county commissioners to add not exceeding fifty per cent. to the valuation thus before them."

These, and other sections, to which reference might be made, clearly show that the legislature intended to give the county commissioners entire supervision over the fiscal affairs of the county. It has given to them power of supervising the assessment, and of "giving to the assessor such instructions as shall be needful to secure full and uniform assessment and returns," and has required the assessment rolls to be returned to the county clerk when extended; and may it not reasonably be im-

plied that it was intended to give them the power of equaliza-
tion, if any doubt existed in the construction of the enumerated
powers expressly conferred upon them by statute?

Our attention is called to the case of *Mining Co.* v. *Van Camp*,
3 Pac. Rep. 22, decided by the Idaho supreme court, 1884, in
which that court holds that an appeal does not lie from the de-
cision of the board of equalization under the general provision for
appeal from the decisions of the board of county commission-
ers.   The statute of Idaho under which the decision was made
is not set out, but the court makes such reference to the statute
that we can see that it is in many respects essentially different
from our own.   The court says: "In this connection, it is proper
to notice that the general meetings of the board of county com-
missioners are required to be held in January, April, July, and
October of each year, at all of which meetings they shall trans-
act any business which may be required of them by law."   Id.
24.   And the court further quotes from the statute as follows:
"The *commissioners* of the county shall constitute a board of
equalization, of which the clerk of the board of commissioners
shall be clerk."   And, after commenting upon the further pro-
vision of the statute fixing the date of the meeting of the "board
of equalization," and requiring it to remain in session until the
"business of equalization presented to them is disposed of," and
the fact that the statute "requires them to meet and discharge
those duties at a time *not fixed by law* for a meeting of the
board of county commissioners," concludes that the board of
equalization is a separate and distinct board from the board of
county commissioners, and that an appeal will not lie under
the general provision of the statute providing for an appeal
from that board.   It will be observed that the very provisions
of the Idaho statute upon which the court relies to deny the
appeal are wanting in ours, and the omissions upon which that
court places much strength are affirmatively supplied by our
statute.   The question being, therefore, almost entirely so much
a mere legislative intention in the construction of the statute,

the Idaho case.may be said to be against rather than in favor of respondent's position.

Our attention is not called to any other adjudications, except *Gillett* v. *Treasurer,* 1 Pac. Rep. 577, in which Judge BREWER, in determining the case, remarks "that the board of equalization is a distinct tribunal from the board of county commissioners. That it is composed of the same persons is immaterial." But the Kansas statute is not given, nor was that question before the court for adjudication. The only point for determination in that case was whether the board of equalization had the same jurisdiction over personal property that it formerly had over real property.

This brings us to the consideration of the question whether this is a "decision" within the meaning of section 46, c. 21, Pol. Code, and the following section. These sections, or so much of them as apply to the question under discussion, are as follows: Section 46: "From all decisions of the board of commissioners, upon matters properly before them, there shall be allowed an appeal to the district court by any person aggrieved." Section 47: "Said appeal shall be taken within twenty days after the decision of said board, by serving a written notice on one of the board of county commissioners." Section 48: "Said appeal shall be filed by the first day of the district court next after such appeal, and said cause shall stand for trial at such term." Section 49: "All appeals thus taken to the district court shall be docketed as other causes pending therein, and the same shall be heard and determined *de novo.*" Section 50: "The district court may make a final judgment, and cause the same to be executed, or may send the same back to the board, with an order how to proceed, and require said board of county commissioners to comply therewith by *mandamus* or attachment as for contempt."

Section 46, *supra,* seems to be very broad in its terms; and, taken literally, would permit an appeal from every decision of the board of county commissioners, whether final, interlocutory, or even preliminary, and whether made upon the merits or in

matters of procedure.    There is but one expressed limitation, and that is "upon matters properly before them,"—a limitation which perhaps the law would imply without enactment.

The word "decision" is a very comprehensive term.    Webster defines the word "decision" to be "an account or report of a conclusion, especially of a legal adjudication; as a decision of arbitrators, a decision of the supreme court."    Taken in its common and most comprehensive meaning, it would give the aggrieved party an appeal from every determination of the board in the construction of the question before them, *provided* only the appellant could show he was aggrieved by the decision.    He might claim he was aggrieved by a continuance of the hearing, by a mere postponement of the consideration of his case, or by any preliminary or interlocutory decision or determination by the board before final action upon the merits of the case.    It cannot be that the legislature intended to vex and annoy the board and the courts with such appeals; and it becomes at once apparent from this *reductio ad absurdum* conclusion, to which the legal mind at once arrives, that a limitation was intended to be placed upon the words "all decisions" from which appeals can be taken.    The powers given to the board of county commissioners, as we have already seen, are very comprehensive, and include, not only those of an administrative and executive character, but those of a legislative and *quasi* judicial character as well.    And it may well be questioned whether the legislature, in giving an appeal from the decisions of the board, intended to make the court a board of county commissioners, and on appeal to require it *de novo* to hear and determine matters of a political and administrative character, which appeal directly to the judgment and discretion of the commissioners.    Such is not the province of *courts*.    Such a new and unusual jurisdiction will not be assumed by the courts upon mere implication of statutes.    And if such a jurisdiction, under the constitution, which proceeds upon the theory that the great powers of the government—the legislative, executive, and judicial—shall be separately exercised by the departments in which such power is ex-

pressly lodged, can be exercised at all by the courts, it can be
done only under an express provision of the statute, which in
terms admits of no other construction.   While it may not be
necessary, and in the view we take of this case we do not deem
it so, to pass upon anything further than the question whether
this appeal is from a "decision" within the statute, we have
deemed it proper to call attention to consequences that must
result from the literal interpretation of the words allowing an
appeal from "all decisions" of the board of county commission-
ers.   And it may not be amiss, in this connection, to quote from
a very well-considered opinion of the Kansas supreme court, in
which the court was asked to review the action of the board of
county commissioners in setting off and organizing a new town-
ship under the political powers conferred upon them by statute.
The statute of Kansas is very similar to our own as to appeals
from the board of county commissioners, as appears from the
opinion quoted below.   The court, in dismissing the appeal
taken from the county board, says:

"Now, will an appeal lie from the board of county commis-
sioners to the district court upon every ' decision ' made by the
board in the exercise of any of its various powers?   The plain-
tiff in error claims that it will, and he makes this claim solely
and entirely upon the broad language of section 30 of the act
relating to counties and county officers.   He says that *any
person* who shall be aggrieved by *any decision* of the board of
commissioners may appeal from the decision of such board to
the district court;' and he claims that a decision may be made
by the board in the exercise of one power, as well as in the ex-
ercise of any other power.   Now, this is true.   The board
must make decisions in the exercise of its legislative powers,
as well as in the exercise of its *quasi* judicial powers.   And
even in the exercise of its discretionary powers, or any of its
political powers, it must also make decisions.   And, in any
single matter that may come before the board, the board may
make decisions.   Many of such decisions may be preliminary
or intermediate; and will the plaintiff in error claim that an

appeal lies from each and every one of such decisions? Suppose that the board in the present case, instead of refusing to grant the petition of the plaintiff in error, and the 55 others who signed the same, had simply decided to postpone the matter until the next meeting of the board; and suppose the plaintiff in error had felt aggrieved at such decision,—could he have taken an appeal to the district court? And could he have continued to take appeals from every decision made by the board with reference to the matter? * * * It seems to us there must be a limit somewhere; that the legislature never intended that an appeal should lie from every decision made by the board of county commissioners. Then, what are the limitations upon the privilege of persons to take appeals from the decisions of the board of county commissioners? Now, the district court is simply *a court,* and exercises only *judicial* power. Hence we would suppose that appeals from the board of county commissioners to the district court must be limited to such cases as require the exercise of purely judicial power, and therefore that, when the board of county commissioners exercises political power or legislative power or administrative power or discretionary power or purely ministerial power, no appeal will lie.

"Now, we do not think that the refusal to grant a petition to set off and organize a new township can be said to be the exercise of judicial power; and it can hardly be said that the granting of such a petition would be the exercise of judicial power. There is no provision in the statutes or in the constitution designating who shall be plaintiffs or who shall be defendants in the case, or whether there shall be any plaintiffs or defendants; no provision authorizing pleadings or evidence or trials or judgments; nothing even squinting towards the idea that any action of the board upon a petition to set off and organize a new township is the exercise of judicial power. This is a new question in this court, and therefore we shall refrain from giving definitions, further than is necessary for the decision of the case. We shall simply decide in this case that,

where the board of county commissioners refuses to grant a petition to set off and organize a new township, one of the petitioners has no right to appeal from such refusal to the district court." *Fulkerson* v. *Stevens,* 1 Pac. Rep. 262, 263.

The court, it will be observed, goes no further in its decision than to hold that it will not entertain appeals from the county board in matters of a political character merely; and upon the question really determined it is in point here, to the extent that it admits that, in matters of a *quasi* judicial character, an appeal lies. If, therefore, we recognize the correctness of the rule announced by the Kansas court, we would have only to inquire whether the matter determined by the county board was of a *quasi* judicial character.

That these determinations of the county board are not judgments, and have none of the binding effects of judicial determination by a court, has already been announced by this court, and that the appeal from such decision is but another method prescribed by the statute for getting into the district court; in other words, that the litigant has the choice between appealing from the decision of the board before whom he was unsuccessful, and commencing a new action by summons, and that in either case the hearing in the district court is *de novo.* *Spencer* v. *Sully Co.,* 33 N. W. Rep. 97, (determined February term, 1887.)

Judged by this rule, we have no hesitancy in saying that the matter presented to the board of equalization was of a *quasi* judicial character,—one which, in nearly all of the states, is permitted to reach the courts in some shape, and to eventuate in a judgment in some form during the proceedings by which the property of the citizen is taken for indebtedness to the state; and it may not be out of place to remark that this may be the saving clause—provided, perhaps, without studied intention, in the hurry of legislation—that may give to the statute the necessary provision and constitutional guaranty that the citizen shall not be deprived of his property "without due process of law." We have no doubt, then, upon the second proposition involved,

that this is à "decision" of the board from which an appeal lies to the district court of the proper county.

The action of the district court in dismissing the appeal is reversed, and the cause remanded to the lower court to proceed with in accordance with this opinion.

All the justices concur.