## BOARD OF COM'RS OF DAVISON COUNTY v. CHICAGO, M. & ST. P. RY. CO.

Civ. Code, § 527, provides that when five electors, resident on a
traveled highway upon a section line over which a railroad has its
track, shall petition such company to construct a crossing, it shall be
its duty to do so within 30 days.   Section 528 provides that, if the
company shall not construct the crossing within such time, the county

commissioners shall serve upon it 10 days' notice of the time and place when and where it shall appear before them, and show cause why it should not construct such crossing. Section 529 provides that, at such hearing, the commissioners shall determine whether the public welfare and convenience demand the crossing. Section 530 provides that, if the commissioners conclude that the public welfare and convenience do require such crossing, an order directing its construction signed by the chairman of the commissioners and attested by the county auditor shall be served upon the company, and that, if the company shall then fail to construct such crossing, the commissioners may do so, and recover the cost in the name of the county. Pol. Code, § 850, allows an appeal to the circuit court from all decisions of the county commissioners upon matters properly before them. Section 830, subsec. 6, provides that county commissioners shall have power to perform such other duties and acts besides those specifically named as they now are or may hereafter be required by law to perform. **Held,** that Civ. Code, §§ 529, 530, do not constitute the county commissioners a special tribunal to hear railway crossing matters from whose decision no appeal will lie, because no provision is made therefor; but that such sections merely confer upon existing boards of county commissioners additional powers, and an appeal will lie to the circuit court under Pol. Code, § 850, from an order requiring the construction of a crossing.

(Opinion filed, July 8, 1910.)

Appeal from Circuit Court, Davison County. Hon. FRANK B. SMITH, Judge.

Proceeding before the board of county commissioners of Davison county to compel the Chicago, Milwaukee & St. Paul Railway Company to construct a crossing or bridge over a certain highway. From an order requiring the crossing to be put in, the company appealed to the circuit court, where the appeal was dismissed, and from the order dismissing the appeal, the company appeals. Reversed and remanded.

*Chas. E. Vorman, Preston & Hannett,* and *J. D. Elliott,* for appellant.

An appeal lies to the circuit court from the acts of the county commissioners growing out of their duties provided for in sections 527 to 531 of the Civil Code. These duties required of the board of county commissioners are not ministerial, but are judicial in their character, leaving the courts to say whether the law has been complied with and properly determined on appeal. Taubman

v. Board of Commissioners, 14 S. D. 206; Pierre Water Works Co.
v. Hughes Co., 5 Dak. 145.

*W. M. Herbert,* for respondent.

Sections 529-530, Civil Code, constitutes the board of county
commissioners a tribunal to hear and determine the matter of com-
pelling a railroad company to put a crossing over it's tracks where
it has refused to do so on proper notification and the benefits to
the public will justify the use of a public highway over said tracks.
The board's action in such a proceeding is summary.   General
statutes upon the subject of appeal do not embrace proceedings
under special statutes where the latter do not include a provision
authorizing an appeal, and a special statute conferring special
powers for a special purpose cannot become so incorporated into
the general act prescribing the powers and duties of the board
that a right of appeal can exist under the general act.   Champion
v. Commissioners of Minnehaha County, 5 Dak. 416; U. S. Gyp-
sum Co. v. Perkins, (Mich.) 114 N. W. 666; Western Union
Railroad Co. v. Dickson, 30 Wis. 389; Allen v. Hostetter, 16 Ind.
15; Holtz v. Diehl, 56 N. Y. Supp. 841; 2 Cyc. 540.

SMITH, J.   This is an appeal from the circuit court of Davi-
son county.   A proceeding was brought under the provisions of
sections 527, 528, 529, and 530 of the Revised Civil Code of 1903
to require appellant to construct a bridge or crossing on its line of
railroad over a highway in Davison county.   The law under which
these proceedings were brought was originally passed by the legis-
lative assembly of this state as chapter 156, Laws 1895, and its
provisions were embodied in the Revised Codes of 1903 as a part
of article 9 of chapter 3, entitled "Railroad Corporation," and the
sections are as follows:

"Sec. 527.   Whenever five electors, residents upon a traveled
highway upon any section line in this state over or across which
any railroad company may have a track or operate a line of rail-
road, shall petition such company to construct a crossing where its
line of railroad crosses said highway, it shall be the duty of such
railroad company within thirty days from the receipt of such peti-
tion to construct and build a good and sufficient crossing for the
accommodation of the public, where its line of railroad crosses said

highway. Service of said petition or a copy thereof upon any agent of said company within this state shall be deemed, for the purposes of this act to be service upon such company.

"Sec. 528. If any railroad company owning or operating lines of railroad in the state of South Dakota, shall refuse, neglect or fail for the period of thirty days from the date of the receipt of the petition provided for in the preceding section, to construct a good and sufficient crossing where its line of railroad crosses such highway, it shall be the duty of the county commissioners of the county in which said crossing is situated, upon being notified of such refusal, to serve ten days' notice upon said railway company of the time and place when and where it shall appear before said county commissioners and show cause if any it have, why it should not be compelled to construct such crossing. A notice shall also be served stating the time and place of such hearing and investigation upon the party or parties making complaint of such refusal on the part of said railroad company.

"Sec. 529. At the time and place specified in such notice the county commissioners shall hear the complaining party or parties, and the railroad company respectively, and shall determine whether the public welfare and convenience demand the construction of such crossing. And in arriving at such conclusion, it shall be the duty of the county commissioners to take into consideration the cost of constructing such crossing and the advantage or convenience its construction would be to the persons living adjacent to said railroad and those who would use said crossing in case the same was constructed, and if the cost of constructing said crossing would be large, and the number of persons whom it would serve would be small, it shall be their duty to refuse to order the same constructed.

"Sec. 530. If upon such hearing and after full investigation and consideration of all the circumstances surrounding the matter, the county commissioners conclude that the public welfare and convenience demand the construction of such crossing an order directing the construction of such crossing signed by the chairman of the board of county commissioners and attested by the county auditor shall be served upon said railroad company. If said rail-

road company shall refuse or neglect to construct such crossing with proper approaches for a period of thirty days after the service of said order, then the county commissioners may proceed to con-struct such crossing with its approaches, and shall be entitled to recover of the railroad company the amount necessarily expended in the construction of such crossing and its approaches, together with all costs, in the name of the county in which such crossing is located. The action to recover the amount thus expended shall be commenced in the circuit court and shall be prosecuted by the state's attorney of such county."

The petition provided for under section 527 was served upon the defendant company, who failed to construct the crossing re-quired, and thereafter a notice was served pursuant to section 528, requiring appellant to appear before the board of county com-missioners of Davison county and show cause, if any, why it should not be compelled to construct said crossing as prayed for in said petition. On the return day of the notice, appellant ap-peared before the board of county commissioners and filed its an-swer, assigning reasons why it should not be compelled to con-struct and maintain this bridge or crossing. The answer put in issue all jurisdictional facts required to entitle the board of com-missioners to proceed, and alleged facts tending to show the cost of the construction of the crossing or bridge, alleged that it would be of slight advantage to persons living adjacent to the railroad and those who used said crossing in case it was constructed, and that the cost of construction of the bridge or crossing would be large, and the number of persons whom it served would be small, and asked that the petition be denied. The matter was presented to the board under the issues joined by the petition and the an-swer to the order to show cause. The board duly considered these issues, and on April 10, 1908, made its order directing appellant to build and construct the bridge or crossing as prayed for in the petition. The order was served on appellant on April 18, 1908. On April 24, 1908, the railway company served a notice of ap-peal from the order of the board to the circuit court of Davison county and demanded a trial de novo. No question is presented as to the regularity of proceedings upon appeal. Thereafter the

petitioners who are respondents here presented to the circuit court a motion to dismiss the appeal on the ground that the circuit court had acquired no jurisdiction of the subject-matter of the proceedings, and no jurisdiction to hear and determine the same, in that the statute under which the proceedings were brought contains no provision for an appeal, but contemplates a summary proceeding before the board of county commissioners. The motion to dismiss was sustained by the circuit court, and the defendant brings the case to this court for review upon the order dismissing the appeal.

The only question involved is whether an appeal will lie to the circuit court from an order of the board of county commissioners requiring the construction of a bridge or crossing. Appellant contends that an appeal will lie under section 850 of the Revised Political Code of 1903, which provides that "from all decisions of the board of county commissioners upon matters properly before them, there shall be allowed an appeal to the circuit court by any person aggrieved." Respondent contends that under the statute of 1895, the board of county commissioners is constituted a special tribunal to hear and determine the matters specified in sections 529, 530, Civ. Code, and contends that, because no specific provision for appeal is contained in chapter 156, Laws 1895, no appeal will lie. It is conceded, and the rule is recognized under practically unanimous decisions of all the courts, that the right of appeal in all cases and from all courts, boards, and tribunals is statutory, and does not exist in the absence of some legislative enactment creating it. It follows that the question of the existence of the right becomes wholly a matter of statutory construction. Article 6, c. 12, of the Political Code, defines and specifies the powers and duties of boards of county commissioners, and declares (section 830): "They shall have power * * * (6) to do and perform such other duties and acts that boards of county commissioners are now or may hereafter be required by law to do and perform."

The question which must be decisive of this appeal is whether the legislative assembly by the enactment of chapter 156, Laws 1895, intended to create a new procedure and a new tribunal

clothed with special powers or intended to confer upon existing boards of county commissioners new and additional powers and duties. No contention appears to be made that an order or decision of a board as to the construction of crossings, whether it be considered that of a special tribunal, or only the performance of additional duties by an existing board, is of such political administrative or discretionary character that it may not be judicially reviewed upon appeal, nor could such contention be sustained if made. In the case of Pierre Waterworks Co. v. Hughes County, 5 Dak. 145, 37 N. W. 733, it was contended that authority to equalize taxes was conferred upon "county commissioners" as an independent board of equalization, and that the action of the board of equalization, not being that of the board of county commissioners, could not be reviewed on appeal to the district court in the absence of a special provision in the statute itself allowing an appeal from orders made in the exercise of their powers as a board of equalization. Chief Justice Tripp in an elaborate discussion of this question says: "The court below held that the board of equalization was a board separate and distinct from the board of county commissioners, and that, while it was composed of the same individuals, its powers and duties were separate and distict, and that its decisions and determinations, if reviewable at all, were not reviewable upon appeal. The question, while an important one to the taxpayer as well as to the profession, is purely a statutory one, and its determination depends entirely upon the construction to be given the statute creating and constituting the board of equalization. * * * The court must therefore look to the wording and phraseology of the statute in each particular case in determining whether the Legislature intended to create two offices, each to be exercised separately by the same individual, or whether it intended to impose upon one officer the additional duties of another office. * * * '(6) To do and perform such other duties and acts that boards of county commissioners are now, or may be hereafter, required by law to do and perform.' Pol. Code, c. 21. It will be observed that extensive powers are intrusted to this board—legislative, administrative, executive, and quasi judicial; and among these enumerated powers is the power to 'equalize the assessment roll of the county.'"

An examination of the decisions of the courts upon matters of appeal from the action of boards and inferior tribunals discloses that the right of appeal in many instances is denied on the ground that the action sought to be reviewed is of a political, administrative, or discretionary character, and for that reason is deemed not to be within the provisions of general statutes granting the right of·appeal.   In other cases where the right to bring questions before the courts by appeal has not been challenged, the same conclusions are reached upon a discussion of the right of judicial review of the acts of special boards or tribunals created by statute. In the case of Western Union Railroad Company v. Dickson, 30 Wis. 389, it was sought to review on appeal the action of a county judge in the appointment of commissioners to award damages for the taking of lands by railroad companies.   The order of the county judge appointing commissioners was held not° reviewable on appeal.   The court concludes, in effect, that the authority conferred by the statute to appoint commissioners for the purposes therein provided was not to be construed as conferring judicial power, and therefore was not within the provision of the statute relating to appeals from the judicial action of the county judge, The case of French v. Lighty, 9 Ind. 475, is cited by respondent's counsel as an authority sustaining his contention in this case.   A statute of Indiana defining the procedure in contested election cases gave a right of appeal in certain cases to the circuit court, but contained no provision for an appeal from the circuit to the Supreme Court.   The practice act of that state provides that appeals may be taken from the court of· common appeals and the circuit to the Supreme Court from all final judgments, etc. It is held that appeals there provided for cover only cases the trial of which is contemplated in the act of which the appealing section forms a part.   The court says:   "We have found that the act providing for contested elections gives no appeal to the Supreme Court; that the act regulating the practice in civil suits only gives an appeal in the cases embraced in that statute; that the act relative to practice in criminal cases only gives an appeal in that class of cases; and that no other statute gives this court jurisdiction of that under consideration, while it is conceded that the court cannot

entertain it, unless empowered to do so by statute.  *  *  *  Appeals to the Supreme Court are authorized by the provisions in the practice act in civil and criminal cases only.  A proceeding to contest an election is neither the one nor the other, but is simply what it is named—the contesting of an election.  It is so treated in our statutes, as has already been seen.  The proceeding is authorized, the practice in it prescribed from beginning to end, and the courts named within which it may be carried on in a special statute complete within itself and under an appropriate title.  *  *  *  The appeal now in question, then being in neither a civil nor criminal case, but in a special proceeding under a special statute, is not authorized by the provisions in the acts above referred to."  The reasoning here presented was followed by that court in the case of Allen et al. v. Hosteter et al., 16 Ind. 15.  The question in that case related to proceedings preliminary to the formation of a new county by the detachment of a portion of the territory of another county.  The decision of that court in the latter case might well have been placed upon the ground that the proceeding itself was political in character rather than judicial, and for that reason could not be judicially reviewed in the absence of an express statute authorizing it.  The case of Holtz v. Diehl, 26 Misc. Rep. 224, 56 N. Y. Supp. 841, is cited by respondent.  In that case it was sought to review acts of the board of park commissioners of the city of Buffalo.  The court says:  "It will be observed that under the provisions of the statute quoted the board of park commissioners is given exclusive control of the parks of the city and vested with an absolute discretion to improve and maintain such parks as in its judgment shall seem proper, and in that respect the discharge of its duty is not subject to the control of any other city department nor of the courts, and, so long as said board performs its duty in the line of maintaining the parks of the city, its judgment is not open to question or revision.  It is only when a board charged with such duties and vested with such discretion transcends its power to the extent of perpetrating a fraud that courts will interfere and give direction to its acts; and this must be the rule of necessity."  It is clear from this language of

the court that the action sought to be reviewed was considered to be of an administrative and discretionary character, and not subject to review in a judicial proceedings.

The case of Phillips v. Corbin, 25 Colo. 62, 49 Pac. 279, was a proceeding under an act "to provide for contiguous towns and cities to become annexed," and was begun by the filing of a petition in the county court for an order requiring the board of trustees of the town of Colfax to call an election to determine the question whether such town should be dissolved and the territory included therein annexed to the city of Denver. A petition was filed and an order made by the county court, and the board of trustees passed an ordinance calling an election. An election was held, and the result reported to the county court showed a majority of votes for annexation. The validity of the election was contested before the county court, and a decree entered to the effect that the proceedings at the election were regular, and that the town of Colfax be dissolved and the territory embraced therein annexed to the city of Denver. From this decree an appeal was taken to the district court, and from the judgment of the district court to the Supreme Court. Before the Supreme Court it was contended that the judgment of the district court was void because no appeal was provided for in the statute from the decree of the county court. Under the statute of that state, concurrent jurisdiction with the district court was conferred upon the county courts "in all civil actions, suits, and proceedings whatsoever, where the debt, damage, or claim or the value of the property involved shall not exceed $2,000." The court says: "It is evident, therefore, that by the enactment of this section the Legislature had not intended to provide by section 5 for appeals in such proceedings, but that it had reference only to appeals from judgments which were rendered by the county court in the exercise of the jurisdiction conferred by section 1; that is a 'civil action, suit or proceeding, * * * and that it relates exclusively to appeals from judgments of the county court rendered in exercise of its ordinary civil jurisdiction.'" The court further says: "The proceeding which the statute requires shall be instituted, carried on, and consummated as the means of dissolving one municipality, and annexing the same to another, is

unquestionably a special statutory proceeding as distinguished from an ordinary action at law or suit in equity. No appeal from such judgment is provided for in the act itself, and there is no constitutional right for the appeal from the county court to the district court. Such right exists only when the Legislature has expressly or by clear implication declared in its favor."

The effect of these decisions seems to be to hold that ·the character of these various special statutory proceedings may be such as to entirely differentiate them from the usual and ordinary jurisdiction and action of the courts or boards from which appeals are sought to be taken, and that the purpose and character of the special proceedings itself may be taken into consideration in determining whether the particular case is within a general statute providing for appeals.

Respondent points out that under the statutes of this state appeals are expressly given in certain proceedings, such as land drainage, roads, artesian wells, etc., and contends that, because no specific provision for appeal is contained ·in chapter 156, Laws 1895, it must be inferred that it was the legislative intent to withhold the right of appeal from orders requiring the construction of crossings, and cites Harvey v. City Judge, 63 Mich. 572, 30 N. W. 188. This case does not support respondent's contention. The 'act there under consideration in express terms allowed appeals from orders of court commissioners upon dissolutions of attachments. The court construing this statute says: "It is apparent that the omission to allow appeals from the circuit judge was intentional, and that appeals should only be allowed from the determination of circuit court commissioners." The case is authority for the proposition that, where a certain appeal is provided in the particular statute, it may be inferred that no other or further right of appeal was intended to be·given. The case of French v. Lighty, supra, may be cited as an authority to the same effect. In construing the provisions of sections 527 to 530 of the Civil Code we observe that the statute says: "It shall be the duty of the county commissioners of the county in which said crossing is stituated * * * to appear before said county commissioners. The county

commissioners shall hear  *  *  *  and determine  *  *  *  and in arriving at such conclusion it shall be the duty of the county commissioners to take into consideration the cost.  *  *  *" The county commissioners shall make "an order directing the construction.of such crossing, signed by the chairman of the board of county commissioners and attested by the county auditor, shall be served upon said railroad." The language of this statute seems to make it entirely plain that the duties and authority created by it were intended to be vested in boards of county commissioners as organized and then existing, and that such boards were thereby empowered to perform "other duties and acts that boards of county commissioners  *  *  *  may hereafter be required by law to do and perform"; and the authority to perform such other duties and acts in addition to those enumerated seems to us as clear as though these new powers were enumerated in an additional subdivision of section 850 of the Political Code. The authority or jurisdiction conferred upon these boards by statute is so varied and extensive that no inference against the right of appeal, and in favor of their action being intended to be made final and summary, may be drawn because of the limited or special jurisdiction of the boards. It cannot be said of them, as was observed by the Michigan court in United Gypsum Co. v. Perkins, 150 Mich. 668, 114 N. W. 666, "the jurisdiction of the probate court in condemnation proceedings is not a part of the ordinary and general jurisdiction of that court," in a case holding that the general jurisdiction of the probate court was not applicable to condemnation proceedings. As said by, Chief Justice Tripp in the Pierre Waterworks case, these boards are intrusted with extensive powers, legislative, administrative, executive, and quasi judicial. Hence it seems to us that the legislative intent as to the right of appeal in these proceedings may be inferred from the nature of the power conferred and to be exercised under these statutes. And where, as in the case before us, the power is quasi judicial, and may involve the expenditure of large sums, and may affect valuable property as well as public and private rights, it would seem that the right of appeal, being fairly within the lan-

guage of the statute, ought not be denied upon any forced. or technical construction.

In People v. Bank of San Louis Obispo, 152 Cal. 261, 92 Pac. 481, a case involving a similar question, that court says: "In doubtful cases where substantial rights are involved, doubt should be resolved in favor of the right, since it is remedial in its nature." In Reynolds v. Board of Commissioners, 6 Idaho, 787, 59 Pac. 730, an appeal from the action of the commissioners fixing salaries of officers under a then recently enacted statute, the court says: "They are called upon to exercise a judicial discretion. * * * They act not as a legislative body, but quasi judicially. * * * It was not intended by the Legislature that the action of the board of commissioners should be final, or that such board might act arbitrarily through mere whim or caprice." The right of appeal was sustained under a statute similar to our own. The same view was expressed in Hadlock v. Board of Commissioners, 5 Okl. 570, 49 Pac. 1012. In State ex rel. v. Bethea, 43 Neb. 451, 61 N. W. 578, Ragan, C., says: "I do not think that the Legislature ever intended that an appeal should be granted from such a judgment as the one in this case. In the first place, there is no appeal provided for, either expressly or by implication, and it was not the intention of the Legislature that an officer convicted and removed from office for betraying the trust reposed in him by the people should stay execution of removal by appealing." This case announces only the settled rule that where no appeal is given by statute, either expressly or by implication, the right does not exist. The same rule is applicable alike to boards and to courts.

In Board v. Haines, 4 Okl. 701, 46 Pac. 561, under a general statute identical with ours, where an appeal was taken from the action of the board upon the submission at an election of the question of stock running at large, that court says: "In all these matters, the board of county commissioners act judicially, and from their decision an appeal to the district court will lie. This appeal does not bring to the district court for review any matter wherein the board acted simply in a ministerial capacity as a canvassing board, but only those questions upon which they acted judicially in their findings upon which they predicated the result. To this

extènt an appeal will lie under section 37, art. 9, supra." Chief Justice Tripp in the Pierre Waterworks Case, commenting on the decision of the Kansas Supreme Court in Fulkerson v. Stevens, 31 Kan. 125, 1 Pac. 262, says: "The court, it will be observed, goes no further in its decision than to hold that it will not entertain appeals from the county board in matters of political character merely, and upon the question really determined it is in point here, to the extent that it admits that, in matters of a quasi judicial character, an appeal lies. If, therefore, we recognize the correctness of the rule announced by the Kansas court, we would have only to inquire whether the matter determined by the county board was of a quasi judicial character. * * * Judged by this rule, we have no hesitancy in saying that the matter presented to the board of equalization was of a quasi judicial character— one which in nearly all of the states is permitted to reach the courts in some shape, and eventuate in a judgment in some form during the proceedings by which the property of the citizens is taken for indebtedness to the state; and it may not be out of place to remark that this may be the saving clause—provided perhaps without studied intention, in the hurry of legislation—that may give to the statute the necessary provision and constitutional guaranty that the citizen shall not be deprived of his property 'without due process of law.'"

In view of the quasi judicial powers conferred upon boards of county commissioners by this enactment, the important interests and valuable rights involved, both public and private, and the broad language of the statute allowing appeals, it seems to us that the right of judicial review of these proceedings upon appeal should be sustained. The order of the court dismissing the appeal is reversed, and the case remanded for further proceedings in the trial court.