Catherine Schropfer, Appellant, v. Hamilton County, Iowa, Drainage District No. 37 and B. J. Stark, Appellee.

**Drainage:** assessments for benefits.  The fact that it may be necessary to lay more drains to render lands tillable will not release the land owner from an assessment for the benefits arising from the drains as laid; it not appearing that his assessments are proportionately higher than those of other land owners.  In this proceeding to confirm an assessment for drainage purposes the evidence is held to sustain an assessment of plaintiff's lands for substantial benefits already received.

*Appeal from Hamilton District Court.*—Hon. C. G. Lee, Judge.

Saturday, April 9, 1910.

This is an appeal from an order of the district court confirming an assessment made against plaintiff's lands by the Board of Supervisors in certain drainage proceedings.—*Affirmed.*

*D. C. Chase* and *Wesley Martin,* for appellant.

*J. M. Blake* and *A. N. Boeye,* for appellees.

PER CURIAM.—The following map shows the various forty acre tracts included in the drainage district under consideration, together with the names of the respective owners and the amount of assessment against each tract:

The plaintiff is the owner of the N. E. ¼ of section 32, and her assessment on each forty acre tract thereof was as follows:   On N. W., $396; S. W., $515.20; S. E., $413.40; N. E., $158.40.

It will be noted that a sixteen inch tile extends northward through the two west forties of the plaintiff's land, and an eight inch tile extends eastward through her two south forties.   The course of the water is southward from the sixteen inch tile.   The same empties into an eighteen inch tile, which latter empties into an open ditch.   Witnesses on behalf of plaintiff testified to their opinion that the drain was of no benefit to plaintiff's land.   The defendant introduced no testimony.   It is contended, therefore, that we are bound to accept the opinions of the plaintiff's witnesses.   The detailed facts, however, testified to by these witnesses, satisfy us that there was no warrant whatever for the opinions so expressed.   On the contrary, the facts so testified to show very substantial benefit.   The most that can be said for plaintiff is that the tile in question is not sufficient to completely drain her land so as to render it safely tillable.   If such facts could properly furnish the basis for an opinion that no benefit was received, then few drainage propositions could be deemed to be beneficial to landowners who are assessed therefor, for few of them result in the complete drainage of the land so assessed without additional drainage by the landowner at his own expense.   Witness Schropfer, a brother of the plaintiff, testified in her behalf that the outlet of the eighteen inch tile into the open ditch was insufficient because the water stood above the tile, and that this had the effect of keeping the tile full of dead water.   He also testified that the eight inch tile was not large enough to carry off the water, but that "a fourteen inch tile would do it."   This witness testified on cross-examination as follows:

Cross-examination of W. W. Schropfer: The whole quarter section is quite level. The northeast forty is the driest. There was thirty to thirty-five acres of crop on it in 1908. The balance of the quarter was in meadow and pasture. Part of it had been seeded down, but, on account of being wet, had went back into slough grass. None of this land except this thirty or thirty-five acres has been broken up since the tile line was put in. I don't think it would have raised a good crop last year. It was so very wet in June and July and the tile did not get the water off for some time. There is a sixteen inch tile running north and south across the west part of my sister's quarter section and across the road onto the Stark land, then it is a fourteen inch. This line drains my sister's land about the same as it does the Stark land. The grade is very flat on this line, but it emptied the ponds on the Stark land. This would indicate that the sixteen inch tile was working. Just at the south line of my sister's land on the sixteen inch tile line there is a man-hole or take-in. I looked in there, and the water is running in it. I represented my sister. She was unmarried. I knew they were going to put in an eight inch tile from the road southwest across the quarter section. I told Mr. Iliff that I did not think it was large enough. He said that depended on the fall. I was not at the hearing on the question of establishment. I did not make any objection at that time. I knew it was going to be constructed out to the road.

Witness Frayne, a drainage engineer, testified as follows:

Direct examination: I would not consider such an outlet sufficient or proper. The grade is not sufficient to clean the tile and keep it from filling up with silt in this particular instance. The tile are not self cleaning. Silt is the particles of soil taken by the water into the tile and lodged. The result of the mouth of the tile being under water, is to fill up the tile as far as the water backs up, because there is no current. I would say, from my experience as a drainage engineer, that tile lines emptying into an open ditch should be above the bottom of

the ditch; they should be, anyway, one-half the size of the tile above the bottom of the ditch. When I made this examination, I could see that silt had accumulated at the mouth of this eighteen inch tile. The water did not flow strong. I went up to the point of the junction with the eight inch tile. I judge this is eighty rods above. I examined this tile at the junction. I found the tile full of mud and water, practically standing. I made an examination of the grade on the eight inch tile. I would say it would fill up, and that there would be no result gained from the drainage. I make the statement that it will fill and become useless as far as drainage is concerned, because the tile has no outlet. I examined the grades of the tile lines. The sixteen inch line was three and one-half of an inch to the one hundred feet. I would not want to use less than one and one-fifth to the one hundred feet for sixteen inch tile. If you had an outlet this would be sufficient. The tile should be laid above the bottom of the open ditch at least a foot. Where the mouth is down in the open ditch, it impedes the flow of water in the tile. The eight inch line of tile on Schropfer's is not large enough to drain the area of land included in the water shed which this eight inch tile is supposed to drain. To give perfect drainage of this area it should be at least twelve inches.

The same witness testified on cross-examination as follows:

Cross-examination of Mr. Frayne: I have not had much preliminary preparation as an engineer. I have done some reading. I took a special course at Ames for three weeks. I don't make engineering a business now; I used to. I have done the preliminary surveying on some of the county drains. I don't know what the grade was on these drains. I aim to get all the fall I can. That depends on the lay of the land. I looked over the Schropfer quarter section in controversy. It is a very flat piece of land. There is no slope to it that is noticeable to the naked eye. I took the grade across one forty of the Schropfer land. The grade was a trifle over two percent, about two and one-half inches to the one hundred feet. It is a reason-

able good grade. I never ascertained whether this was a sufficient grade to drain one hundred and twenty-five acres with an eight-inch tile or not. On the main line where the eighteen-inch enters the open ditch there is a concrete bulkhead and the tile goes through this bulkhead. At the time I was there, the upper end of this open ditch was filled up so as to hold the water in the tile. This was probably caused by the silt in the water running in the tile. If the open ditch was cleaned out it would give a fair outlet for the large tile.

He also testified that upon examination he found about three inches of mud in the large tile and from one to three inches of silt in the sixteen-inch tile.

These are plaintiff's principal witnesses on the question of the efficiency of the tile. From this it is manifest that a cleaning of the open ditch at the mouth of the outlet of the eighteen-inch tile will give normal efficiency to both the eight-inch and the sixteen-inch tile. As respects the failure of the tile to carry off all the water, the testimony of the witnesses is confined to a very wet period in the summer of 1908, and to two dates in December and February when the ground was covered with slush and ice. If it be true it will require more drains to be laid in order to render plaintiff's lands tillable, this furnishes no reason why she should not be charged with the benefit of the present tile drains as far as it goes. So far as comparative benefits are concerned, no claim is made by the witnesses that plaintiff's assessments are proportionately higher than those of any other landowner except Welch. The testimony does tend to show that Welch's assessment is too low. Taking the testimony as a whole, it is manifest to us that plaintiff ought to be assessed as for substantial benefits received. If she is assessed too high, we have no data before us from which we could determine what lower assessment she should bear, except testimony to the effect that she should bear no assessment whatever. We feel compelled to disregard these opinions

on this record.      Approximation is the best that can be attained in assessments of this character.

We think the district court properly confirmed the assessment as made, and its order is now *affirmed.*