## In re YANKTON-CLAY COUNTY DRAINAGE DITCH.
### FARGO et al., Appellants, v. AASETH et al., Respondents.
### (137 N. W. 608.)

1. **Drainage Proceedings—Appeal from County Commissioners—Constitutionality of Statute.**

    Laws 1909, Chap. 102, Sec. 9, amending Laws 1907, Chap. 134, Sec. 12, providing for an appeal, upon any final order or determination of a board of county commissioners establishing or denying proposed drainage, to the circuit court, by any one deeming himself aggrieved by such order or determination, is constitutional, and authorizes an appeal to circuit court from an order of two boards of county commissioners of adjoining counties, denying a petition for a system of drainage; as does also the general clause in the Pol. Code (Sec. 850).

2. **Drains—Drainage System—Sufficiency of Evidence to Establish.**

    In a proceeding to establish a drainage system, evidence held to warrant a finding that the proposed system, involving lands in two counties, would be of great benefit to the owners of property affected, and would result in substantial increase in value of the land, and conducive to public health, convenience and welfare, and is necessary and practicable.

3. **Evidence—"Public Documents"—Federal Drainage Investigation —Irrigation and Drainage.**

Pamphlets issued by the Department of Agriculture, published under direction of Congress, provided for by Appropriation Act of Congress, 33 Stat. 294, and by resolution of House of Representatives, 33 Stat. 590, relating to drainage investigations by federal officers and applying to a system of drainage in question, and printed, as appears on their face, by the government printing office, in 1905, under authority of Office of Experiment Stations of Irrigation and Drainage Investigations, were admissible as "public documents," under Code Civ. Proc., Sec. 528, defining public documents and declaring them admissible in evidence.

4. **Evidence—Judicial Notice—Acts and Resolutions of Congress.**

Courts take judicial notice of the acts and resolutions of Congress, or of either house, without proof thereof.

5. **Drainage Proceedings—Reception of Evidence on Appeal—Formal Offer in Evidence.**

Where an engineer's report of survey of a proposed drainage ditch was before county commissioners when the matter was heard by them, and on appeal to circuit court county auditor testified that all records, etc., before the boards were by him turned over to clerk of court, whereupon counsel for one of petitioners stated he understood all papers and procedings before county commissioners were before the court, and that it was unnecessary to formally offer them in evidence; the judge replying that if there was no objection it would be considered that all papers and documents pertaining to the proceedings were before the court without being formally introduced, the same as they were before the boards; no objection to the statement of counsel or court being made; **held,** said report was properly regarded as before the court without formal offer in evidence.

6. **Drainage Proceedings—Gist of Proceedings—Cost of Laterals.**

in a proceeding to establish a drainage system, on appeal from order of county commissioners denying the petition, the gist of the matter presented to circuit court for determination was whether the agricultural lands involved required construction of drainage ditch between specified terminals, and, if so, the line on which the ditch should be constructed, and whether same would be conducive to health of the community; hence, the court having found such facts in affirmative, it was not essential to the validity of its order establishing the drain that testimony should also have been heard concerning the number and expense of lateral drains required, and also to determine their dimensions and location.

Whiting, J., and McCoy, P. J., dissenting.

(Opinion filed October 1, 1912. Rehearing granted January 6, 1913.)

Appeal from Circuit Court, Yankton County.   Hon. R. B. TRIPP, Judge.

Drainage proceedings by John O. Aaseth and others, to which James S. Fargo and others filed objections, involving establishment of a drainage system over lands in Yankton and Clay counties.  From a judgment of the Circuit Court in favor of petitioners and overruling objections and remonstrances previously sustained by the Boards of County Commissioners of Yankton and Clay Counties, objectors Fargo and others appeal. Affirmed.

*H. G. Tilton* and *C. H. Dillon,* for Appellants.

The 1st, 2nd and 25th assignments raise the question whether the location and establishment of a drainage ditch is not so far legislative, administrative and ministerial, that the court is without jurisdiction to entertain an appeal.  Our conteniton is that it is not a judicial nor even a *quasi* judicial question.   In raising this point we are fully aware that since this question was first argued in the lower court, the case in re Sorenson Drainage Ditch, 131 N. W., 300, has been decided by this court, in which this was apparently held to be a judicial question and hence appealable. We have taken the pains to examine not only the opinion of the court but the briefs of both appellant and respondent in that case.   In doing so we find that this question was not argued by counsel for respondent, but was conceded to be a judicial question.   Counsel expressly state that they are not ready to contend that this appeal statute is unconstitutional, but say, "On the contrary, we believe the statute constitutional and that the courts have the power to decide questions such as the statute permits to be taken into court on appeal."

The government of this state is divided into three divisions, executive, legislative and judicial.   The United States Supreme Court in a recent case, Interstate Commerce Commission v. Railway Company, 31 Supreme Court Reporter, p. 393, following B. & O. Railway Company v. U. S. ex rel. Pitcairn Coal Co., 215 U. S., 481, 54 L. Ed., 292, in an opinion by Chief Justice White emphatically refused to interfere with the findings and decision of the Interstate Commerce Commission, because such decision involved administrative and ministerial acts.   Chief Justice Tripp, in Pierre Waterworks Company v. Hughes Co.,

5 Dak., on p. 163, while holding that an appeal would lie from the action of the county commissioners as a board of equalization, utters this timely warning in regard to the statute allowing appeals from "all decisions" of the board of county commissioners. The court says: "And it may well be questioned whether the legislature, in giving an appeal from all decisions of the board, intended to make the court a board of county commissioners, and on appeal to require it to hear and determine matters of a political and administrative character, which appeal directly to the judgment and discretion of the commissioners. Such is not the province of courts." Section 6 of article 21 of our constitution adopted in 1906, provides that the legislature "May provide for the organization of drainage districts for the drainage of land for any public use; and may vest the corporate authorities thereof, and the corporate authorities of counties, townships and municipalities with the power," etc. We have examined the constitutions of many of the States and can find no such special provision in any of them. We think no other State in the Union has such a special constitutional provision on the drainage question.

The creation of a drainage district, hence a separate taxing district for drainage purposes, is a far different question than the question of whether a railway company should be compelled to build a road crossing, as was the issue in Board of Com. of Davison v. Railway Company, 127 N. W. 728. The court rightly said this question was not raised and could not be raised in that case. It is a far different question from that involved in Board v. Pierre Waterworks Co., *supra*. In neither of these cases was the board of county commissioners called upon to create a political subdivision of the county.

Doubtless the case of Pelletier v. Ashton, 12 S. D., 366, 81 N. W., 735, and Wickhem v. Alexandria, 122 N. W., 597 (S. D.), will be cited as they were in the court below, in which this court held, that the refusal of a city council to grant the petition for the exclusion of lands from the corporate limits of the city is appealable, and that this court is committed to a line of reasoning that would hold the creation of a drainage district to be a *quasi judicial act*. There is no express constitutional provision making

the changing of boundaries of cities a legislative act as that quoted above in regard to drainage.

The Supreme Court of many of the States hold statutes allowing the court's jurisdiction in matters of the change of city boundaries constitutional, on the ground that the legislature dictates the facts upon which the change shall be made. The court then adjudges whether those facts exist. This is the holding in Iowa, Nebraska, California and a number of other States where the court has emphatically held that creation of a drainage district and the establishment and construction of drainage is a legislative and administrative act, and have drawn the distinction clearly between cases relating to city boundaries and cases relating to the construction of drainage. Tyson v. Washington County (Neb.) 110 N. W., 634; State v. Ross (Neb.) 118 N. W., 85; Denny v. Des Moines County (Ia.) 121 N. W., 1066; Norwalk St. Ry. Co., Appeal, 37 Atl., 1080; 38 Atl., 708; 39 L. R. A., 794; State v. Barker (Ia.), 116, 96; 89 N. W., 204; 57 L. R. A., 244.

Our drainage law was largely borrowed from North Dakota and that State took it from Michigan. Martin v. Tyler, 4 N. D., 281, 60 N. W., 392; Michigan long prior to the adoption of this statute by North Dakota, had held the location of a drainage ditch to be a legislative and administrative act, and that the court was without power to review such acts. Houseman v. Kent Judge (Mich.), 25 N. W., 369; Clinton Township v. Teachout (Mich.), 111 N. W., 1052.

The statute of North Dakota grants no appeal from the question of the location and establishment of a drainage ditch, but the Supreme Court of that State, so far as it has expressed an opinion, has clearly indicated that such a provision would be void. Erickson v. Cass Co., 11 N. D., 494, 92 N. W., 841; Turnquist v. Commissioners, 11 N. D., 514; 92 N. W., 852; Alstad v. Sinn, N. D., 109, N. W., 66; State v. Fish, 15 N. D., 219; 107 N. W., 191; Soliah v. Board, 17 N. W., 393.

These States will be presumed to have adopted the construction of the State from which the law was taken.

"The question of the practicability of a route to be selected for a public ditch is in the discretion of the inferior tribunal or its officers and cannot be reviewed on appeal." Sample v. Carroll, 132 Ind., 496; 32 N. E., 220.

Whether a system of drainage is more comprehensive and costly than need be in order to drain petitioner's land is a matter for the commissioners of drainage to determine, and their deter- mination is not reviewable by the court.    Meranda v. Spurlin, 100 Ind., 380.

"The commissioners in determining this preliminary question of the necessity of appropriating lands for the purposes of a ditch, are called to the exercise of political and not judicial pow- ers."  Zimmerman v. Canfield, 42 O. St., 463.  The formation of reclamation districts is a legislative act and referable solely to the legislative department.  Glide v. Superior Court (Cal.), 81 Pac., 227.  Courts hold, and must continue to hold, that they cannot exercise other than judicial power.  Champion v. Board of Min- nehaha Co., 5 Dak., 430; Pierre Waterworks Co. v. Hughes Co., 5 Dak., 145; Ill. Cent. Ry. Co. v. Chicago, 141 Ill., 586, 30 N. E., 1044, 17 L. R. A., 530; State v. Johnson, 61 Kan., 803, 60 Pa., 1068, 49 L. R. A., 665.

Under drainage statute, Sec. 5, Chap. 102, Laws 1909, these are matters purely discretionary.  The State constitution quoted above directs that the legislature shall provide that these discre- tionary powers shall be exercised by the "corporate authorities thereof and the corporate authorities of counties, townships and municipalities," and the legislature has invested this power in the board of county commissioners.

Exhibits 15 and 16 consist of a pamphlet and map said to be issued by the department of agriculture.

It was not shown that this pamphlet came from the depart- ment of agriculture.  We say that this pamphlet and map are not "public documents" within the meaning of section 528, Code of Civil Procedure, nor is it shown that this pamphlet was published under the directions of congress or either house thereof.

At assignment of error 4, the defendants objected to the ad- mission of Exhibits 4 and 5, being the report of the survey of the proposed ditch and to each of said exhibits.

The trial in the Circuit Court was *de novo,* and it was neces- sary for the parties appealing from the order of the board of county commissioners to prove all facts necessary to make out a case.  These reports without any evidence as to their accuracy certainly would not be competent testimony.  The court held with

us and ruled that the question was one of identity merely, not of the accuracy or admissibility of the evidence. After making this ruling the court considered the evidence in making of his findings. Outside of the exhibits there is no evidence to sustain the findings of the court.

Mr. McDaniel, at page 75 of the record, says efficient drainage of this district cannot be had without the construction of twenty-five laterals. As to what these laterals would cost or where they would be located, as to what lands they would drain, as to what lands would be benefited by them the record is absolutely silent. At finding No. 8 the court says no evidence concerning laterals was introduced other than "the report of the Missouri Valley Engineering Company," "The court makes no findings with reference to lateral drainage ditches or the necessity therefor," but leaves this to the county commissioners. The report of the Missouri Valley Engineering Company was not admitted in evidence. By the judgment the commissioners were ordered to construct this main ditch; they were not directed to do anything farther. According to the evidence before the court this main ditch will not furnish efficient drainage. The court does not direct, and could not direct, the construction of any laterals, for the plaintiffs had neglected to place before the court any evidence upon which the court could act. Therefore, the court should have dismissed this proceeding upon the grounds that the plaintiffs had failed to establish a case. In re Nishnabotna River Improvement District No. 2, 123 N. W. 775 (Ia.); Zinser v. Board, 14 N. W. 51 (Ia.); In re Request Riv., 39 N. J. L., 433; Reclamation Dist. No. 108 v. West, 129 Cal., 622, 62 Pac., 272; People v. Kingston, 65 N. Y. Sup., 590; State in rel McKuns v. Dist. Court, 90 Minn., 540, 97 N. W., 425; Guarantee Trust Co., v. Chicago, 162 Ill., 505, 44 N. E., 832; State v. City of Elizabeth, 40 N. J. L., 274; Farnham on Waters, p. 921. In re Park Ave. Sewer Appeal of Parker (Pa.) 32 Atl. 574; Gilmore v. Hentig, 33 Kan. 156, 5 Pac. 781; Atchison v. Price, 45 Kan. 296, 25 Pac. 605.

There is absolutely no evidence to sustain the judgment of the court, because no evidence was offered or received in reference to the location of the ditch, its course, size, grade, capacity, depth or slopes of the banks. We therefore insist that the en-

gineer's report is not in evidence, and that no evidence is in the record showing the accuracy of any engineering report.

Assignment 27, "Insufficiency of the evidence to justify the judgment, in this, that no evidence was offered showing the amount of land or what land would be benefited by the ditch, nor the amount of such benefits, nor was any evidence offered showing the cost of construction, nor of the amount of damages that would be caused by the construction of such ditch, nor any evidence showing that the benefits would construct the ditch and pay the costs and damages. That the board of county commissioners have not at any time passed upon such matters, and such matters were not before the court on appeal, and that such ditch can only be constructed out of the benefits and not by general taxation."

The State should in every instance provide that the cost must not exceed the benefits to result from the improvement. If no such statutory provision is made expressly, it is implied. Farnam on Waters, 209; Redmon v. Chancey, 7 N. D., 233; 73 N. W., 1081; Martin v. Tyler, 4 N. D., 278; 60 N. W., 392; 25 L. R. A., 838, and the cases cited by the court at the end of the opinion.

In re Nishnabotna River Improvement District No. 2, 123 N. W., 769, the Iowa court quotes this language in main from Village v. Baker, 172 U. S., 269, 43 L. Ed., 443, quoting also Zinser v. Board of Supervisors (Ia.), 114 N. W., 51. The general rule is that the expenses of the construction of a drain cannot be assessed against particular lands to an amount in excess of benefits. 14 Cyc., 1061.

## IN REPLY.

Respondents' counsel, at f. 164, say, "There is nothing in this record showing or tending to show that the court in making its findings in any way used or based its findings upon these Exhibits 4 and 5, or upon any other exhibits constituting report of the survey of the main line of the proposed ditch." In this statement counsel must be mistaken. And we call attention to finding of the court number 6, reciting that said main drainage ditch as described in the report of said Missouri Valley Engineering company, will furnish a satisfactory outlet for such lateral drainage." The report referred to were Exhibits 4 and 5. This is again referred to in the court's conclusions, paragraph 1,

record, p. 12.    Again, the court. "orders and adjudges" that
said Yankton-Clay county drainage ditch which is particularly
referred to in the report of the survey thereof made by the
Missouri Valley Engineering company and duly filed in the office
of the county auditor of each of the counties of Yankton and
Clay, be and the same is established as described in said re-
port." Record, p. 820.

*French & Orvis,* for Respondents.

This court surely will not, unless compelled by settled and
undoubted legal principles, hold unconstitutional the statute which
gives the right of appeal to the courts to review the decision of
the circuit court. We, of course, understand that the preceding
argument only shows that the right of appeal to the courts ought
to exist in the class of cases to which the one under consideration
belongs. The real question is, Does it exist? Or stated in an-
other way, Is Section 12, Chapter 134 of the Laws of 1907 as
amended by Section 9, Chapter 102 Laws of 1909, unconstitutional
in so far as it purports to give the right of appeal from an order of
a Board of County Commissioners establishing or denying a pro-
posed drainage ditch?

This statute, if constitutional, clearly authorizes the appeal
taken to the circuit court in the matter now before this court. In
re Sorenson Drainage Ditch, Appeal of Lakings, 131 N. W. 300,
(S. Dak.); Davison County v. C. M. & St. P. Ry. Co., 127 N. W.
728; Pelletier v. City of Ashton, 12 S. D. 366.

The validity of statutes involving the same principle has been
affirmed in the following cases, citing Callen v. City of Junction
City (Kans.) 23 Pac. 652, 7 L. R. A. 736; City of Wahoo v.
Dickinson, (Nebr.) 36 N. W. 813; Blanchard v. Bissell, 11
Ohio St. 96; City of Burlington v. Leebrick, 43 Iowa 252; Monk
v. Town of George, (Iowa) 53 N. W. 240." Wickham v. City
of Alexandria, South Dakota, 122 N. W. 597; Williams v. Tur-
ner Township, 15 S. D. 182; Section 1738, Rev. Pol. Code; State
ex rel Jonason v. Crosby, District Judge, et al, (Minn.) 99 N. W.
636; Spencer v. District Judge, 55 Minn. 278, 56 N. W. 1006; State
v. Macdonald, 26 Minn. 445, 4 N. W. 1107; McGee v. County
Com'rs, 84 Minn. 474, 88 N. W. 6; Bennett v. Marion, (Iowa) 76
N. W. 844; Hardy v. McKinney, (Ind.) 8 N. E. 232; Meehan v.
Wiles, 93 Ind. 52; Bryan v. Moore, 81 Ind. 9; Bisenius v. City

of Randolph (Neb.) 118 N. W. 127; Young v. Salt Lake City (Utah). 67 Pac. 1066; City of Burlington v. Leebrick, 43 Iowa 252; Blanchard v. Bissell, 11 Ohio St. 96; Henrico County v. City of Richmond (Va.) 55 S. E. 683; Wilson v. Tawley (Ind.) 42 N. E. 362; Lancaster v. Leaman (Ky.) 52 S. W. 963; Lites v. Hand (Ind.) 1 N. E. 871, 4 N. E. 160; City of Wahoo v. Dickinson (Neb.) 36 N. W. 813; Incorporated Village of Fairview v. Giffee, 76 N. E. 865, (Ohio).

The last sentence of section 528, Code of Civil Procedure is as follows: "The term 'public document' is defined to be all the publications and maps printed by order of the legislative assembly, or Congress, or either house thereof; and all such documents are admissible in evidence."

In McCall v. U. S., 1 Dak. 307, it was held that all publications of state papers, maps, charts and public documents when such publications are by authority of Congress are as valid evidence as the originals from which they were copied, and may be introduced and read as evidence on mere inspection. U. S. v. Beebe, 1 Dak. 292.

By the Agricultural Department appropriation act of April 23, 1904, found on page 294 of the statutes enacted by the Fifty-eighth Congress.

On page 590 of the United States statutes enacted by the Fifty-eigth congress appears a resolution adopted by the senate and house of representatives, and approved April 27, 1904.

At page 9 of the record, A. B. McDaniel testified that he had the government report prepared by Mr. Elliott with reference to this same ditch called the "Gayville Ditch." He then testified that the map, Exhibit 16, had been detached from the book. He testified as shown by the record on page 10 that the map was in the same condition as when it left the printing office except that a line had been drawn parallel to, and averaging about a mile north of the railroad line of the Chicago, Milwaukee & St. Paul Railroad, and a word written thereon since he received it from Mr. Elliott.

From the acts of Congress referred to it appears that Congress authorized the printing of reports, bulletins and maps showing the result.

The court would take judicial notice of all Acts of Con-

gress and we think it committed no error in determining that Exhibits 15 and 16 were parts of a public document, published by order of Congress and that they were admissible in evidence.

The next assignment of error argued by appellants is Number 4. It relates to Exhibits 4 and 5, being parts of the report of the survey of the proposed ditch. At page 20 of the record, Mr. McDaniel testified that Exhibits 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14, being the report of the survey of the proposed ditch, were before the County Commissioners at the time they had a hearing in the matter. Exhibits 4 and 5 were in evidence. See testimony of D. F. Culbertson, the engineer in charge of the field work upon the survey, commencing on page 21 of the record.

If this court has patience to read and consider the evidence set out in the preceding pages, it will have no hesitation in saying that every fact necessary to be proven, to justify the establishing of the drainage ditch described in the surveyor's report is amply sustained by the evidence, without reference to the statements of fact contained in the surveyor's report. We can safely say that every fact stated in the report is proven by the books containing levels, which were introduced in evidence, and by the oral evidence of Professor McDaniel, Mr. Culbertson and others. Mr. Elliott's map, Exhibit 16, also is valuable as evidence, if this court shall hold that it was properly admitted. If not admissible, in the opinion of this court, then we say that there is other ample competent evidence shown by the record to sustain every finding of fact made by the trial court. We particularly call the attention of this court to the evidence of D. F. Culbertson, found on pages 723 to 728 of the record, wherein he gives the levels on the surface of the ground along the proposed ditch, from the east bank of the Gayville Slough to the county line between Yankton and Clay Counties at each 100 foot station, commencing at Station 169.

Now assuming that Elliott's map, Exhibit 16, was properly admitted in evidence, let us see what it shows. Elevations are shown at every section and quarter section corner on north and south section lines, two miles apart.

The testimony of Dr. Gyllienhammar, on pages of the record from 159 to 167, shows that this drainage would be conducive to

public health and welfare. The testimony of Charles Shepardson a witness for those opposing the ditch, on pages 542 to 555 of the record, shows that he had typhoid fever while living along the Gayville Slough.

Assignments 20 and 22 are discussed together. Defendants' counsel claim that after the court had assumed jurisdiction to try the case it should have determined the question of the necessity of laterals and the number and location of the same, at the same time it determined the questions relating to the main line of the drainage ditch. The court evidently was of the opinion that the evidence before it was not sufficient to justify a decision with reference to the twenty-five lateral ditches referred to in the testimony of Professor McDaniel. There is some evidence in the record outside of the surveyor's report relating to these laterals but the same were not described to any great extent in the testimony. The petition for the drainage ditch only asks that the main ditch be constructed. In finding of fact Number 8 the court says: "The court makes no findings with reference to lateral drainage ditches or the necessity therefor, but leaves the determination of all questions with reference to later drainage ditches to the Boards of County Commissioners of Yankton and Clay Counties."

And in the judgment of the court it is stated: "The question of the necessity of lateral drainage ditches and the number thereof, if any, that may be necessary to effectually drain the land tributarly to said drainage ditch so established, is not passed upon or determined by the court, but the same is left for consideration by the Boards of County Commissioners."

It certainly could not be error for the court to decide that the main drainage ditch should be established and to find as a fact that it would furnish an outlet sufficient for all lateral drainage ditches necessary to properly and adequately drain the entire drainage district, without at the same time determining and directing that a certain number of lateral ditches should be constructed. The matter of lateral ditches might well be left for the determination of the Boards of County Commissioners, and it is to be presumed that the Boards of County Commissioners, if the judgment of the trial court shall be sustained, will at once take up the matter of lateral ditches and will determine how many there should be and where they should be located. It is to be presumed that if the

judgment of the trial court shall be affirmed, the boards will exercise their own judgment in determining what lateral ditches ought to be constructed, that they will do whatever their honest judgment determines ought to be done to make the drainage effective.

It is true that lateral ditches should be designed and provided for before any assessment is made against the land to defray the cost of constructing the main ditch. We realize that as fully and as completely as do the counsel representing defendants in this case, but the question here is whether the trial court as a matter of law had the right to determine and direct that the main line of the proposed drain should be constructed without passing upon the question of laterals.

It was the duty of the Board of County Commissioners to determine whether the proposed ditch would be conductive to the public health, convenience and welfare, and whether it would be practicable for draining agricultural lands.

If the county commissioners ought to have established the ditch then the court ought to have established it provided it found that the proposed drainage ditch would be conducive to the public health, convenience or welfare, or that it was needed or practicable for the purpose of draining agricultural lands.

Cases cited by us on the first law question discussed in this brief clearly show that the court committed no error such as is complained of by defendants by assignment Number 26.

Assignment Number 27 is to the effect that no evidence was offered showing the amount of land or what land would be benefited by the ditch, nor the amount of such benefits, nor was any evidence offered showing the cost of construction, nor amount of damages that would be caused by the construction of the ditch. It is true that the question of damages was not touched upon during the trial and it was not necessary that it should be. It is not true that there is no evidence showing the amount of land ,or what land would be benefited by the ditch. It is true that there is no evidence showing the amount of benefits to each particular tract of land, and under the drainage law, this matter never can be shown until the Board of County Commissioners is called upon to make an assessment of benefits with a view to raising money for the purpose of paying the cost of the drainage.

There can be no contention that the cost of this drainage would exceed the benefits. An estimate of the cost of the entire drainage from the county line east to Vermillion river is shown by the surveyor's report, Exhibit 32, and from the estimates there given the court could easily determine that the cost of constructing the ditch from its starting point to the Clay county line would be very much less than the benefits, but this is not all the evidence on the subject in the record. Mr. Elliott as before shown, states on page 666 of Exhibit 15 as follows: "It will be noted from the estimates given that while the aggregate expense is large the amount per acre when distributed over the whole area is small." This is sufficient to show that the cost of drainage is not so great as to prevent the construction of the same.

CORSON, J. On the 5th day of August, 1909, a petition, signed by P. J. Conklin and about 50 others living in Yankton and in Clay counties, S. D., was filed with the boards of county commissioners of said counties, praying that a drainage ditch be established, commencing near the Chicago, Milwaukee & St. Paul Railroad track some two or three miles west of Gayville, and extending generaly in a southeasterly course south of said railroad track through Yankton and Clay counties to the Vermillion river. A copy of the petition so filed with the board of county commissioners of Yankton county was forwarded to the state engineer, as required by section 1 of chapter 102 of the Laws of 1909, relating to drainage. The appellants herein, and certain other owners of land along the line of the said proposed ditch, opposed the construction of the same and filed a remonstrance. Notwithstanding the favorable report of the engineer employed by the county commissioners to report on the feasibility of the project, the objections of the remonstrants were adopted by the boards, and they severally refused to grant the petition of the petitioners. From the order so made by the county commissioners denying the petition, the petitioners took an appeal to the circuit court of Yankton county. Upon the trial of the case by the court without a jury, the order of the boards was reversed, and the court, after finding the facts as to the preliminary proceedings, found as follows:

"(4) That thereafter the McDaniel-Trimmer Company became, or was succeeded by the Missouri Valley Engineering Com-

pany, and under and in pursuance of said contract made a careful and complete survey of the territory proposed to be affected by the Yankton-Clay county ditch. Said territory consists of a wide, flat tract of land of about 30,000 acres, lying between the Chicago, Milwaukee & St. Paul Railroad on the north and the Missouri river on the south, in Yankton and Clay counties.    *

*    *   The general slope of said tract of land is southeasterly, and the ground, generally considered, is very flat, rising gradually toward the Missouri river. The main line of said proposed drainage, as surveyed and recommended by said engineering company, commences at a point 1,132 feet west of the southeast corner of section 4, township 93 north, range 54 west, and runs in a generally southeastern direction to the Vermillion river; the total length of the main ditch being 17.38 miles.

"(5)    The court finds that said entire tract of land is low, wet land, and the general slope thereof is in a southeasterly direction toward the Vermillion river along the line of said proposed main drainage ditch; that in rainy seasons large portions of the land which will be affected by said drainage ditch cannot be advantageously cultivated because of excessive moisture, and thau water stands in what is termed the Gayville slough, near the town of Gayville, and at other places the year around; that such water becomes stagnant, so much so that at times green scum forms upon it, and water commonly stands in the cellars of houses in the town of Gayville and elsewhere in the territory which will be affected by said proposed drainage.

"(6)    The court finds that the construction of said main drainage ditch, as described in the report of said Missouri Valley Engineering Company, will furnish a satisfactory outlet for such lateral drains as may be necessary to completely and effectually drain the tract of land hereinbefore described, and that such main drainage ditch will be conducive to the public health, convenience, and welfare, and is necessary and practicable for draining agricultural lands.

"(7) ' The court further finds that the portion of the land along the main line of said proposed drainage system lying in Yankton county, if drained at all, must be drained through Clay county to the Vermillion river substantially along the lines of said proposed drainage ditch, and that no part of the land which will

be affected by said proposed drainage system can be drained directly into the Misouri river in times of high water, when drainage is most needed. * * *."

From the foregoing findings of fact, the court found as conclusions of law:

"(1)   That the Yankton-Clay County Drainage ditch, as in the foregoing findings generally described, and as more particularly described in the report of the survey of the Missouri Valley Engineering Company in said findings referred to, should be established, and should be constructed under the direction of the county commissioners of said counties, acting conjointly.

"(2)   The appellants herein are entitled to judgment establishing said drainage ditch and reversing the order or resolution of the boards of county commissioners of Yankton and Clay counties, from which the appeal hereinbefore referred to was taken; and said judgment should direct the county commissioners of Yankton and Clay counties to proceed with the construction of said drainage ditch in the manner required by the law relating to and prescribing the procedure of the county commissioners subsequent to the establishment of a drainage ditch. Let judgment be entered accordingly."

From the judgment of the circuit court so entered, an appeal was taken to this court by Fargo, Jetley, Junker and Lund, the four appellants named herein.

[1]   Upon the case being called for trial in the circuit court a motion to dismiss the appeal was made by the respondents therein, on the ground that the orders appealed from were not judicial; that they were official and not appealable; and that the court was without jurisdiction to entertain an appeal from said orders. This motion was denied by the court, and its denial is made ground for the first, second, and twenty-fifth assignments of error.

Section 9 of chapter 192, Laws of 1909, amending section 12 of chapter 134, Laws of 1907, among other things, provides: "An appeal will lie upon any final order or determination of a board of county commimssioners establishing or denying the proposed drainage * * * to the circuit court of the county in which said drainage is located, by any one deeming himself aggrieved by any such order or determination."

It is contended by the appellant that the provisions in the law allowing an appeal from the decision of the board of county commissioners is unconstitutional, for the reason that the action of the board of county commissioners is administrative and not judical, and that their decision contains matters of discretion and administrative matters that are not subject to review by appeal; and for the further reason that section 6 of chapter 21 of the state Constitution of this state, adopted in 1906 provides that the Legislature "may provide for the organization of drainage districts for the drainage of land for any public use, * * * and may vest the corporate authorities of counties, townships and municipalities with the power," etc.

It is contended, however, by the respondents on this appeal that this is not an open question in this court, as this court decided, in re Sorenson Drainage Ditch, 131 N. W. 300, that an appeal will lie from the decision of the boards of county commissionerss in drainage cases establishing or refusing to establish drainage ditches, which decision is sustained by the previous decisions of this court in the analogous case of Davison County v. C. M. & St. P. R. R. Co., 26 S. D. 57, 127 N. W. 728, and also in the analogous cases of Pelletier v. City of Ashton, 12 S. D. 366, 81 N. W. 735, and Wickhem v. City of Alexandria, 23 S. D. 556, 122 N. W. 597.

We are of the opinion that the respondents are right in their contention, and that the question of the right to appeal from the decision of boards of county commissioners in the matter of drainage ditches is fully established in this jurisdiction. It will be noticed in the clause of the Constitution above quoted there is no limitation of the right to appeal from the decision of boards of county commissioners in the matter of drainage ditches, and that the right of such appeal is not taken, therefore, directly or by implication. While it is true there is a conflict in the authorities as to the right of appeal in this class of cases, ths court has followed thee line of decisions holding that the right of appeal exists, and that the appellate court has full jurisdiction to hear and determine the questions arising in such proceedings.

The general clause, also, in the Political Code, authorizing appeals from all orders of the board of county commissioners, has uniformly been construed to give the right of appeal in this class

of cases since the decision of the territorial Supreme Court in
Pierre Water Works Co. v. Hughes County, 5 Dak. 163, 37 N.
W. 733. The necessity for such right of appeal will be apparent
to all persons familiar with the influences that may be brought
to bear upon county commissioners and city councils, and the im-
portance to the people of the right of appeal to a court which
will be less likely to be influenced in the determination of ques-
tions presented in such proceedings. Without impunging any im-
proper motives to the county commissioners of Yankton and Clay
counties, the importance of the question presented in the proceed-
ings now before us, involving as it does the drainage of about
32,000 acres of land which, if properly drained, it would appear
from the evidence, would constitute one of the garden spots of
the state, and which is now, by reason of its present condi-
tion, of apparently little value, clearly shows the propriety of
having such decisions reviewed by an impartial court entirely re-
moved from the influences that may have surrounded the boards
of county commissioners and resulted in their unfavorable action
in the case at bar. Without further discussing the question of the
right of appeal, we are clearly of the opinion that the court was
right in denying the motion to dismiss the appeal and in taking
jurisdiction over the same.

[2] As we have seen, the court in its findings found "that
the construction of said main ditch, as described in the report of
said Missouri Valley Engineering Company, will furnish a satis-
factory outlet for such lateral drains as may be necessary to com-
pletely and effectually drain the tract of land hereinbefore describ-
ed, and that such main  drainage ditch will be conducive to the
public health, convenience and welfare, and is necessary and prac-
ticlable from draining agricultural lands."

It is contended by the appellant that this finding is not sus-
tained by the evidence; but we are satisfied, after a careful exam-
ination of the same, that the preponderance of the evidence in the
case clearly warrants the court's findings, and that such a drain-
age ditch as the court finds necessary will be of great benefit to
the owners of property, and will result in a substantial increase in
the value of land and in the improvement of the health of the
people living along the line of or in the vicinity of the proposed
ditch. The evidence is very voluminous, and an attempt to give

a review of it would prolong this opinion to an unwarrantable length, and would serve no useful purpose. The case was tried by a judge who has resided at Yankton for a third of a century or more, in the vicinity of the land sought to be drained, and who has evidently considered the evidence for and against the establishment of the drainage ditch, and the advantages and disadvantages to the owners of the property therefrom; and the fact that that court, after a very lengthy and apparently exhaustive trial of the questions involved decided in favor of the construction of such a ditch, and upon motion for a new trial declined to grant the same, must necessarily have great weight with this court.

A. B. McDaniel, who made the survey and the report, heretofore mentioned, to the county commissioners, was examined at great length, and seemed to be able to give clear and logical reasons why the construction of such a ditch would accomplish the purpose sought, with the lateral drains that migh be necessary to drain the 30,000 acres described in the petition, without doing serious injury to any of the owners of the land adjoining the said ditch; and his conclusions, stated in his report to the boards of county commissioners, are fully sustained by his evidence, when subjected to a rigid cross-examination. It is true there was an engineer introduced as a witness by the appellants who seemed to dispute many of the propositions made by the engineer, McDaniel; but the reasons given for his conclusions are not satisfactory to this court.

[3] Error is alleged on the part of the appellant in the admission of documents (Exhibits 15 and 16) purporting to have been issued by the Department of Agriculture, under the direction of the Chief of Irrigation and Drainage Investigations, on the ground that it was not shown that the pamphlet came from the Department of Agriculture, and that the pamphlet and map are not "public documents," within the meaning of section 528, Code of Civil Procedure; nor is it shown that his pamphlet was published under the direction of Congress, or of either house thereof.

We are of the opinion that the court committed no error in admitting these documents. The title of Exhibit 15 is as follows:

U. S. Department of Agriculture,
Office of Experiment Stations,
A. C. True, Director.
Annual Report of
Irrigation and Drainage.
Investigations, 1904.
Under the Direction of
Elwood Mead,
Chief of Irrigation and Drainage Investigations.
Separate No. 9:
Report of Drainage
Investigations, 1904.
By C. G. Elliot,
Engineer in Charge of Drainage Investigations.
(Reprint from Office of Experiment Stations Bulletin No. 158.)
(Seal of Department here.)
Washington:
Government Printing Office.
1905.

On the margin of the map (Exhibit 16) are printed the following words: "U. S. Dept. of Agr. Bul. 158, Office of Exp. Stations, Irrigation and Drainage Investigations."

By section 528, Code of Civil Procedure, it is provivded: " * * * The term 'public document' is defined to be all the publications and maps printed by order of the Legislative Assembly, or Congress or either house thereof; and all such documents are admissible in evidence.

In McCall v. United States, 1 Dak. 320, 46 N. W. 608, it was held by the late territorial Supreme Court, as appears by the headnote: "All publications of state papers, maps, charts, and public documents, when such publications are by authority of Congress, are as valid evidence as the originals from which they were copied, and may be introduced and read as evidence on mere inspection." And in U. S. v. Beebe, 2 Dak. 292, 11 N. W. 505, the former case of McCall v. U. S. supra, was approved and followed.

By the Agricultural Department appropriation act of April 23, 1904, found on page 294 of the statutes enacted by the Fifty-Eighth Congress (33 Stat. 294, c 1486), it is provided as follows: "Irrigation and Drainage Investigations: To enable the Secretary of Agriculture to investigate and report. * * * and upon plans for the removal of seepage and surplus waters by drainage * * * and for the preparation, printing, and illustration of reports and bulletins on irrigation and drainage including employment of labor in the city of Washington or elsewhere; and the agricultural experiment stations are hereby authorized and directed to co-operate with the Secretary of Agriculture in carrying out said investigations in such manner and to such extent as may be warranted by a due regard to the varying conditions and needs and laws of the respective states and territories as may be mutually agreed upon, and all necesary expenses, sixty-seven thousand five hundred dollars."

On page 590 of the United States statutes enacted by the Fifty-Eighth Congress (33 Stat. 590) appears the following resolution adopted by the Senate and House of Representatives and approved April 27, 1904: "Resolved, by the Senate and House of Representatives of the United States of America in Congress assembled, that there be printed eight thousand copies of the report of the Director of the Office of Experiment Stations, prepared under the supervision of the Secretary of Agriculture, on the work and expenditures of that office and of the agricultural experiment stations established in the several states and territories under the act of Congress, of March second, 1887, for 1903, * * * and that annually hereafter a similar report shall be prepared and printed, the edition to be the same as for the report herein provided."

[4] It will thus be seen that the publications made by the Agricultural Department are made by virtue of acts of Congress, and come clearly within the provisions of those sections. Mr. McDaniel testified that he had a government report, prepared by Mr. Elliot, with reference to the same ditch, called the "Gayville Ditch." He further testified that the map (Exhibit 16) had been detached from the book, but that the map was in substantially the same condition as when it left the printing office, except for some slight changes, which he fully described. Of course, the

court will take judicial notice of the acts and resolutions of Congress, or either house, and no proof was necessary, therefore, as to those acts and resolutions. These reports, being official documents issued by the Agricultural Department under the power conferred upon that department by the laws of the United States, were, under the provisions of our Code, and the cases above referred to, properly admissible in evidence; and the contention of the appellants, therefore, cannot be sustained.

[5]    It is further contended by the appellants that exhibits 4 to 14 inclusive, being the report of the survey of the proposed ditch, were not offered in evidence; but it appears from the record in this case that this report of the survey of the proposed ditch was before the county commissioners at the time they had the matter before them.

It is contended by the respondents that it was unnecessary to offer these in evidence on the appeal under the drainage law, as it is made the duty of the county auditor to transmith to the clerk of the circuit court the petition and all other papers and all other records in said matter, or certify copies thereof, and such matters shall be heard as an original action in said circuit court; and that such documents come properly before the court for its consideration, without each separate document being specifically offered in evidence.

It appears from the record in this case that the county auditor of Yankton county testified that he had turned over to the clerk of the court all the records, documents, and papers that were before the boards, and thereupon one of the counsel for the respondents made the following statement: "I take it that all of these papers and proceedings are before the court on this appeal, and that they do not need to be offered in evidence any more than they were before the boards of commissioners. This matter comes up before the court de novo. It comes before the court just as it came before the boards of county commissioners in the first place; and it is now for this court to decide the same questions that were before the boards of county commissioners when it came before the boards acting together." To this statement the court replied: "That is the way we have proceeded in these cases; and if there is no objection it will be considered that all the papers and documents pertaining to this proceeding are before the court,

without being formally introduced, just the same as they were before the boards of county commissioners." .No objection to the statement of counsel or of the court was made, so far as the record discloses. It would seem therefore from this statement made by counsel and the reply of the court, to which no objection was made by the then respondents, that the counsel for the appellants in the lower court were fully justified in assuming that all the documents and papers used before the boards of commissioners were in fact offered in evidence on the trial of the action; and that the contention of counsel for the appellants herein,. that they were not formally offered in evidence, in view of the proceedings, is not tenable.

We are of the opinion, therefore, that the report of the engineer, McDaniel, was before the court, and might properly be considered by it in its findings in the case, notwithstanding the formal offer of the same made on the trial. But assuming that the report of McDaniel was not in evidence, we are of the opinion that there was sufficient evidence, independent of this report to justify the findings of the court; and that therefore the court committed no error in its findings upon the evidence adduced independently of the report. As before stated, the evidence is too voluminous to attempt to give it in detail in this opinion, extending as it does over several hundred pages of closely typewritten matter.

[6] It is further contended by the appellants that there was no evidence as to the number or expense of the lateral drains required, and, as the court failed to find or determine the number of such laterals, the dimensions of the same, and their location, and confined its findings and judgment to the main drainage ditch alone, that therefore the findings are not sufficient to sustain the judgment, and in order to be binding upon the counties the laterals and locations of the same should have been provided for.

We are of the opinion that this contention is clearly untenable, for the reason that the main question presented by the appeal was as to whether or not the agricultural lands in question required the construction of a drainage ditch between the terminal points presented in the petition, and if so, the line upon which said ditch should be construced. When, therefore, it was determined by the court that such a drainage ditch was required

in order to drain the agricultural lands, and that the same would be conducive to the health of the community, he decided all it was necessary for him to decide in the case; and the details as to the manner and method of constructing the main ditch, and the number and manner of construction of the laterals, in order to accomplish the proper drainage of the district, were left to be carried into effect by the county commissioners of the respective counties. The powers and duties of the boards in the construction of the ditch as ordered by the court are in fact applicable, the same as if the boards had decided that the drainage ditch as surveyed was necessary and proper, and had proceeded to carry out that determination by making the proper orders, letting the proper contracts, and establishing the necessary levels, assessing the damages and benefits, etc. In other words, the court's decision had the effect of requiring the boards to grant the petition sought, leaving the details to the further action of the boards.

We have not overlooked the other errors assigned as to the admission and rejection of certain evidence of Vinson and others; but we are of the opinion that there is not sufficient merit in these exceptions assigned as error to warrant a separate consideration of them in this opinion. It must suffice, therefore, to say that, in our opinion, the court was clearly right in its rulings upon these questions, and that no prejudicial error has resulted to the appellants from the admission or exclusion of any evidence in the case.

The judgment of the circuit court and order denying a new trial are affirmed.

WHITING, J. (dissenting). I am unable to concur in the foregoing opinion. Under the decree of the trial court, the county commissioners are directed to proceed to establish the main drainage ditch, and it is left to said commissioners to determine what, if any, lateral ditches shall be dug to complete the drainage system. From the findings of the said court, it is clear that it did not intend that the drainage system should consist of this main ditch only, as the court finds that such main ditch "will furnish a satisfactory outlet for such lateral drains as may be necessary to completely and effectually drain the tract of land hereinbefore described;" and it is certainly clear from the record that such main ditch alone, while it might be "conducive to the public health, convenience, and welfare, and necessary and practicable for drain-

ing agricultural lands," is not alone sufficient for the drainage of enough lands as to be practicable from a financial standpoint. While I do not think it was necessarily incumbent upon the trial court to determine the exact number of laterals and their locations, and I concede that these are maters that might properly be left to the discretion of the commissioners, I am clear that such court should have received evidence of the cost of the complete drainage system, so as to determine whether the benefits flowing from such a system would be commensurate with such cost, and that, until it had done so, it should not have directed the construction of any part of such system; and, if it had done so, that it then should have directed the construction of the whole system.   The trial court could not properly excuse itself from investigating and passing upon the whole drainage system, merely because, as set forth in one of its findings, there had "been no argument before the court with reference to the number of lateral  drainage ditches which may be needed or which should be constructed tributary to said main drainage ditch, and  *  *  *·  no evidence introduced before the court with reference thereto, other than  *  *  *."  .

For all that appears from the findings of the court, the construction of a complete and efficient drainage system may result in the confiscation of every acre of farm lands within the tract supposed to be benefited thereby.   Zinser v. Board, 13 Iowa, 660, 114 N. W. 51.·

This case should be demanded to the circuit court, with directions for it to make findings and decree in relation to the whole drainage system.

McCOY, P. J., concurs in the views expressed by WHITING, J.