## Haynes, et al. v. Roberts, et al.

(Decided November 26, 1912.)

### Appeal from Henderson Circuit Court.

1. **Lands—Drainage—Instructions.**—In a proceeding to establish and construct a ditch for the drainage of lands, held that an instruction which set forth the lands of the remonstrants and the amount assessed against each, without setting forth the lands of those who did not remonstrate, together with the amount of their assessments, was not prejudicial error, as these facts were fully disclosed by the evidence.

2. **Same—Evidence—Sufficiency.**—In an action to establish and construct a ditch, evidence examined, and held sufficient to sustain the finding of the jury.

N. POWELL TAYLOR, R. A. MILLER and YEAMAN & YEAMAN for appellants.

MORRIS & HART and CLAY & CLAY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This action was commenced in the Henderson County Court under article 8, chapter 6, Kentucky Statutes, to establish what is known as "Double Dam and Swan Pond Ditch." Upon the filing of the necessary petition, viewers and a practical engineer were appointed by the county court to survey the route of the proposed ditch and report thereon, as required by the

statute. The proposed ditch ran from a point near the middle of Double Dam Pond along the right of way of the Louisville, Henderson & St. Louis Railway for a distance of 13,900 feet to Green River. The viewers estimated the cost of the proposed ditch at $19,750.50. They reported that the proposed ditch would be of public convenience, utility and benefit, and greatly conducive to the health and welfare of the people, and recommended its establishment. They specified in their report the names of persons whose land would be benefited by the proposed ditch, giving the number of acres in each tract assessed, and the estimated number of acres benefited. The provisions of the statute seem to have been faithfully carried out in every particular. Upon the filing of the report of the viewers, exceptions or remonstrances were filed by Forest Haynes, the L., H. & St. L. Ry. Co., and others. Reviewers were appointed, who sustained the finding of the viewers. Additional exceptions and remonstrances were filed by appellants. A jury was empanneled in the county court, which sustained the finding of the viewers, except in three or four instances, where they held that certain parties had been assessed too high. Judgment was entered as provided by the statute, and an appeal prosecuted to the Henderson Circuit Court. Trial was had before a jury, which sustained the finding of the viewers. Judgment was entered establishing the proposed ditch, and assessing the costs as fixed in the viewers' report. From that judgment this appeal is prosecuted.

Appellants first complain of the instructions. It is unnecessary to set out the instructions in full. They follow the language of the statute. The only complaint urged against them is that the court told the jury how much land was assessed against each of the appellants and the amount in dollars and cents assessed against each, but failed to tell them the amount of land or money assessed against appellees. It is, therefore, insisted that it was impossible for the jury to form any judgment as to whether all the land was assessed in proportion to the benefits to be derived from the construction of the ditch, as required by the statute. While the number of acres assessed, and the amount of the assessment against each of the appellees, might, with propriety, have been submitted in the instructions, we fail to see how appellants were prejudiced by the failure of the court to do this. The various witnesses were asked

whether or not the ditch as constructed would drain the lands of the protesting landowners, or afford an outlet for their drainage; whether the land would be benefited to the extent of the amount assessed them, and whether they were assessed in proportion to the assessments made against the others who were not protesting. While there was evidence on the part of appellants that they were not assessed in proportion to the benefits received, there was no evidence conducing to show that appellees, who filed no remonstrances, were assessed too low, and that this additional burden was placed upon appellants. The jury were told, in substance, that the lands of the appellants that the jury might believe from the evidence would be benefited, should be assessed in proportion to the benefits, if any, that would accrue to them by the construction of the ditch, and directed the jury to determine and say in its verdict which ones, if any, of them would be benefited, and whether they had been assessed in proportion to the benefits to be derived, and if not in proportion to the benefits to be derived, to say in their verdict what they, or each of them, should be assessed. The cost of the proposed ditch, and the amount of the assessment against appellees, having been fully brought out in the evidence, the jury were as fully informed of these facts as if they had been embraced in the instructions.

Another ground of exception urged by appellants is that the evidence fails to show that the lands of appellants would be benefited by the proposed ditch. In this connection we are cited to the fact that two or three witnesses state that in order to drain the lands on Hay Pond, Hog Pond, Swan Pond and Double Dam Pond, additional ditches would have to be constructed. While this is true, a number of witnesses testify that the lands belonging to appellants will be drained by the proposed ditch, and that the assessments on their lands are in proportion to the benefits that would be derived. The evidence further shows that the lands of appellants that are assessed are worth either practically nothing or from $10 to $15 an acre. When the ditch is completed these lands will be worth from $35 to $50 an acre. While it may be true that in order to make the system of drainage provided for by the proposed ditch absolutely perfect, additional ditches will have to be constructed, we think that the evidence is sufficient to show that the proposed ditch in and of itself will not only drain the lands

of appellants, but will benefit them to the extent of the assessments. The jury were properly instructed that in fixing the amount of the assessments they were not to include any benefits that would be derived by the construction of additional ditches. Even if it be true, therefore, that additional ditches will have to be constructed in order to afford perfect drainage for appellants' land, it does not appear from the evidence of the finding of the jury that the jury took into consideration the benefits to be derived from the additional ditches in fixing the amount of the assessments.

Appellant, L., H. & St. L. Ry. Co., insists that the damages that will accrue to it by reason of the construction of the proposed ditch were fixed too low. The jury allowed it $250 for removing its switch, but allowed it nothing for injury which it claims will result from the caving in of the proposed ditch. It appears that the ditch adjoins its right of way, and at three or four points extends over its right of way for a distance of a foot or two. Its evidence is to the effect that the soil of the ditch is sandy and loose, and that the sides of the ditch will eventually cave in and inundate its roadbed. To avoid this condition it will be necessary to riprap the right of way, which will involve an expense of about $10,000. Other witnesses, however, testify that the banks and sides of the proposed ditch are not composed of sand, but are composed of blue mud of a solid and substantial character, and that there is no probability of the sides of the banks caving in. There was also evidence on the part of the railroad company that the cost of removing its switch track, which it is conceded will have to be removed, will be greatly in excess of $250.

We cannot say that the finding of the jury upon any of the questions involved in this case is flagrantly against the evidence. In a case like this, the evidence is usually conflicting. The remonstrants and their witnesses show that no benefits will accrue to them. Those seeking the construction of the ditch testify to the contrary. The viewers go upon the ground; the reviewers do the same. A jury from the vicinity finally hears the evidence. Those who are upon the ground are in a much better position to pass on the questions involved than we are, and great reliance should therefore be placed on the judgment of those who are so situated. The finding of the viewers being sustained by the reviewers and then confirmed by the verdict of a properly

instructed jury, and being unable to say that their finding is flagrantly against the evidence, the judgment will not be disturbed.

Judgment affirmed.