In re YANKTON-CLAY COUNTY DRAINAGE DITCH.

FARGO et al., Appellants, v. AASETH et al., Respondents.

(141 N. W. 393.)

1. **Drains—Drainage System—Assessments.**

    Under Laws 1907, Chap. 134, Sec. 6, defining benefits accruing under a drainage system, **held,** that lands that will be benefited by laterals are subject to assessment for the main ditch, being an outlet for laterals, whether the latter are provided as part of the system or not.

2. **Drains—Damages for Right of Way—Relevancy of Issue.**

    The question of damages for right of way for drainage ditch and to lands outside thereof is not ordinarily one for consideration in connection with establishment or non-establishment of the ditch, though, where cost of proposed drainage system is large in proportion to benefits, it might become material.

3. **Drains—Main Ditch and Laterals—Relevancy of Issues—Discretion of Commissioners.**

    Where, on appeal from an order of county commissioners in proceedings to establish drainage system, while construction of main ditch alone will be conducive to public health, convenience and welfare, yet, **held,** that it would be wisdom for the joint commissioners to determine all matters relating to laterals and dikes in establishing the drainage system; the trial court did not err in so deciding.

(Opinion filed May 6, 1913.)

On rehearing. Rehearing denied.

For former opinion, see 30 S. D. 79, 137 N. W. 608.

H. G. Tilton, C. H. Dillon, and C. M. Stilwell, for Appellants.

French & Orvis, for Respondents.

No briefs were filed by either party on the application for rehearing.

GATES, J. This matter is before us on rehearing. For the former opinion, see 30 S. D. 79, 137 N. W. 608.

The important features of the argument on rehearing were directed to the failure of the trial court to pass upon the questions of laterals, of dikes along the James river, and of damages to lands both within and without the right of way. The whole territory covered by the proposed drainage system consisting of about 32,000 acres is subject to overflow. About every other year practically the entire territory is unfit for cultivation on account of excessive moisture caused by overflow, rainfall, and flood waters. The results contemplated by the construction of the main drainage ditch are the quick removal of the surface waters occasioned thereby, the drainage of agricultural lands, and the promotion of the public health, convenience, and welfare. As we understand the evidence, the chief purpose of the laterals is to completely drain the wet lands tributary to the main ditch; in other words, to remove ponds and sloughs, and to provide subdrainage for such tributary lands. In so far as the main ditch will carry off the rainfall, overflow and flood waters, independently of the laterals, all of the lands that will be benefited will be assessable in varying amounts, whether the laterals are provided or not. In so far as the public health, convenience, and welfare are concerned, the benefits will partially, if not largely, accrue by reason of the construction of the main ditch. These benefits, together with the benefits arising from the removal of rainfall, overflow and flood waters, are apportionable to all of the lands benefited without regard to the question of subdrainage, or the drainage of ponds and marshes in particular spots. According to the engineer's estimate, the average cost per acre of the proposed drainage system, including laterals, will be approximately $3.60, excluding the cost of dikes. The cost of the pro-

posed dikes would be in the neighborhood of thirteen cents per acre on the average. Excluding the cost of laterals, the average estimated cost per acre would be less than $2.50.

[1] It must also be borne in mind that, in so far as the main ditch furnishes an outlet for laterals, the lands that would be benefited by laterals would be subject to assessment for the main ditch, whether such laterals be provided as a part of the drainage system at this time or not. Section 6 of chapter 134 of the Laws of 1907, as amended, provides: "Benefits to be considered in any case shall be such as accrue directly by the construction of such drainage or indirectly by virtue of such drainage being an outlet for connecting drains that may hereafter be constructed." A provision similar to this is contained in the drainage laws of several of the states and the principle has been upheld in the following cases: Erickson v. Cass Co., 11 N. D. 494, 508, 92 N. W. 841; Lipes v. Hand, 104 Ind. 503, 1 N. E. 871, 4 N. E. 160; Culbertson v. Knight, 152 Ind. 121, 52 N. E. 700; Haynes v. Roberts, 150 Ky. 769, 150 S. W. 1006; Roby v. Shunganunga Drainage District, 77 Kan. 754, 95 Pac. 399; Schropfer v. Hamilton Co., 147 Iowa,, 63, 125 N. W. 992; Beckett v. Portland, 53 Or. 169, 99 Pac. 659; Mason v. Chicago, 178 Ill. 499, 53 N. E. 354; Bailey v. Sioux Falls, 28 S. D. 118, 132 N. W. 703.

[2] The question of damages for lands taken by the right of way and to lands outside of the right of way is not ordinarily a matter for consideration in connection with the question of the establishment or nonestablishment of the ditch. It is possible that they might become material in cases where the cost of the proposed drainage system is large in proportion to the benefits. In the case at bar the question was not properly at issue. Even if the construction of dikes is necessary, even if large sums will be needed to pay damages, even if the cost of the construction of the ditch will be greatly in excess of the estimate and even if no laterals are provided, we are satisfied that the total cost of the ditch will be well within the amount of the benefits to be derived from its construction.

[3] While we are convinced from the evidence that the construction of the main drainage ditch alone will be conducive to the public health, convenience, and welfare, and is necessary and practicable for the the drainage of agricultural lands, it is never-

theless our opinion that it would be the part of wisdom for the joint boards of Clay and Yankton counties to determine all of the matters in relation to laterals and dikes in connection with the establishment of the main ditch. It may be that facts obtained in relation to the recent high water in this territory will cause the joint boards to conclude that some of the proposed laterals may not be needed or that others may be, or that the dikes proposed in the Elliott Report will be needed, or that others may be needed. In this connection it may not be out of place to quote the following from the memorandum opinion prepared by the learned trial judge at the time the ditch was established: "In view of the magnitude of this project, I take the liberty of inviting the boards' careful attention to what is said by Mr. Elliott in regard to levees, and such action, if any, in regard to it as they may think advisable, notwithstanding the course of the James river has since changed." We are convinced that the trial court did not err in leaving these matters to the wisdom of the joint boards. We believe that they can safely be trusted to carry out in good faith the details of perfecting the whole system of drainage of this entire territory.

Upon the argument on rehearing the point was raised by appellant's counsel that the trial in the circuit court being *de novo* that court should have made a finding upon all of the matters in issue; that it should not have referred the matters of laterals and dikes to the discretion of the joint boards. This point is rather inconsistent with the argument in appellants' brief wherein complaint is made that the trial court went too far in its decision. It was there claimed that the court should not have made an order establishing the ditch, but should have confined its decision to the issues of public health, convenience, and welfare, and necessity and practicability of the drainage. Suffice it to say that these were the chief questions at issue, but that in deciding these it was proper for the court to establish the ditch. A determination of the questions as to laterals and dikes was not necessary to the determination of the main issues. These questions were not fully presented, and for the reasons hereinbefore stated we are of the opinion that the trial court acted with proper discretion in leaving to the joint boards these matters of detail.

We have given careful attention to all of the points raised in

the petition for rehearing aside from those herein considered, and find them to be without merit.

The former opinion and judgment of this court are adhered to.